THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY L. JONES, Defendant-Appellant.

Second District   Nos. 2—97—0525, 2—97—0544 cons.

Opinion filed April 14, 1999.—Modified on denial of rehearing August 6, 1999.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Leslie Hairston, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Gary L. Jones, appeals from the orders of the trial court in two separate cases. In the first case, the trial court granted the State's motion to revoke defendant's probation for domestic battery (720 ILCS 5/12—3.2 (West 1996)) against the victim, Carmen Ferguson. In the second, defendant was convicted after a jury trial of first-degree murder (720 ILCS 5/9—1(a)(2) (West 1996)) for the stabbing death of the same victim. We affirm as modified.

## Case No. 95—CF—2604

On December 17, 1995, defendant was charged by complaint with domestic battery in case No. 95—CF—2604. The complaint alleged that defendant struck the victim in the face on December 16, 1995, and that he had been charged previously with domestic battery in case No. 95—CM—7649. Defendant pleaded guilty in case No. 95—CF—2604 on January 31, 1996. In exchange for the plea, defendant received a sentence of 30 months' probation with the conditions that he serve 90 days in the county jail, not have any contact with the victim, and attend counseling. The trial court found that the plea was properly entered and that defendant had a previous violation of the statute in case No. 95—CM—7649.

On February 6, 1996, the State nol-prossed case No. 95—CM—7649. On March 26, 1996, the State filed a petition for adjudication of violation of probation. The violations of probation mentioned in this petition are the offenses charged in case Nos. 96—CF—514 and 96—CF—524. Case No. 95—CF—2604 was continued until these two other cases could be adjudicated.

## Case Nos. 96—CF—514 and 96—CF—524

In March 1996 defendant was charged in case No. 96—CF—514 with unlawful possession of a stolen vehicle. In case No. 96—CF—524, defendant was charged also with first-degree murder for the stabbing death of the victim. The grand jury returned indictments in both cases in April 1996. On the State's motion the two cases were joined prior to trial.

In September 1996 the State provided a supplemental answer to discovery that contained a list of other crimes dating back to 1992

that defendant had allegedly committed against the victim. The State indicated that it intended to use this evidence to show defendant's motive and intent. Defendant filed a motion *in limine* seeking to exclude all evidence of prior crimes. The trial court heard arguments on the motion and excluded incidents from 1992 through 1994 as too remote. However, the trial court allowed the State to present evidence of certain incidents in 1995 and 1996.

The jury trial began on March 17, 1997. The State nol-prossed case No. 96—CF—514 before jury selection.

Pam Ferguson, the victim's sister, testified that defendant was the victim's boyfriend for four years. Ferguson lived with the victim in 1995 and testified that she witnessed defendant choking the victim in October 1995. Ferguson did not call the police at the victim's request.

Richard Ciganek, an Elgin police officer, testified that he responded to a reported domestic battery on December 12, 1995. The victim was bleeding from a cut above her left eye, and she had swelling around her right eye. Ciganek testified that defendant admitted arguing with the victim but denied striking her and did not know how she had been injured. He claimed that she pushed him.

Jeffrey Clausen testified that he met defendant in his capacity as defendant's probation officer on February 5, 1996. Defendant had pleaded guilty to the December 16, 1995, domestic battery. Clausen met with defendant several times, and defendant was scheduled for a mandatory appointment with Clausen at 8:30 a.m. on March 12, 1996.

Frank Schreiner is the plant manager for North American Printing Company in Elgin. Defendant began working at the plant on March 4. At the end of his shift on March 8, defendant informed Schreiner that he might have jury duty on Monday, March 11. He would have to call on Sunday evening to find out whether he needed to serve. Defendant reported to work on March 11 but failed to report for work on March 12 and failed to contact Schreiner.

Susan Morfin, the director of the Kane County Jury Commission, testified next. Defendant had been summoned for jury duty on March 11. His group was not required to appear on March 11 but needed to call to see if they would be needed on March 12. Defendant did not appear on either date.

Shatara Rogers and her mother, Dorothy Rogers, also testified for the State. They lived in the same apartment building as the victim, and Shatara typically left their apartment at 7 a.m. to meet her school bus. She testified that she saw defendant sitting on the step to the apartment building on the morning of the murder. He was smoking a cigarette and was attired in red and black, wearing a vest over his shirt.

Terrence Williams testified that he was the victim's boyfriend from 1987 through 1993. They remained friends after they stopped dating. Williams telephoned the victim at approximately 6 a.m. on March 12. He spoke to her for several minutes. He testified that during the conversation he heard the door buzzer and a knock at the door to the victim's apartment. Telephone records verified Williams's call and also a call from Odessa Ferguson at 6:12 a.m. that lasted only 23 seconds. Odessa, the victim's mother, apparently telephoned the victim again at 6:34, 6:40, 6:43, 7:19, 8:02, and 8:51 a.m. Telephone records also indicate that Sherry Carter attempted to telephone the victim at 8:16, 8:24, 8:45, and 8:56 a.m. No telephone calls were answered from the victim's apartment after 6:12 a.m.

Sherry Carter, the victim's sister, testified. She explained that Odessa did not testify because she suffers from schizophrenia and had just recently been released from the hospital prior to the trial. Sherry testified regarding her attempts to reach the victim on the telephone on the morning of March 12. She became concerned and woke her husband Perry at approximately 8:45 a.m. She knew that her niece and nephew, who lived with the victim, had spent the previous night at Odessa's home. She asked Perry to visit Odessa's home to see if the victim was there. Sherry also testified that she had seen defendant on previous occasions wearing a red sweatshirt that was similar to the bloodstained sweatshirt found in the victim's apartment.

Perry testified that he obtained a key to the victim's apartment from one of the children. He went to the victim's apartment but assumed that she was not home when he did not see her new 1995 Honda Civic in the parking lot. Perry testified that he entered the apartment with the key. He found the victim in her bedroom and initially tried to wake her. He then noticed the dried blood behind her bed and splattered on the wall. He attempted to telephone for help, but the telephone in the bedroom was "smashed" and the telephone in the kitchen was dead. Perry contacted the police by using a neighbor's telephone.

Emmett Moneyhun testified that he was the evidence technician at the crime scene. He photographed the apartment and searched for physical evidence. He found no evidence of forced entry, and no latent fingerprints were found on the doorknob. Moneyhun photographed bloodstains on the walls, carpet, and mattress in the bedroom. The telephone near the bed was unplugged and broken. He found a blood-covered steak knife in a woman's purse next to the bed. There was also a plastic laundry basket at the foot of the bed. A reddish-brown stain was found under the basket, and Moneyhun discovered a latent fingerprint in a reddish-brown substance on the basket.

Detective Robert Beeter headed the investigation into the murder. He testified that he learned the victim had recently purchased a 1995 Honda Civic. Beeter and another officer searched every street and parking lot within a mile of the crime scene but were unable to locate the vehicle.

Lawrence Cogan, a forensic pathologist, conducted an autopsy on the victim. Cogan testified that the victim had several superficial cuts, which he described as defensive injuries, to her hands. The victim had minor abrasions, including linear abrasions along her neck consistent with strangling. She had also suffered a deep stab wound by her left shoulder and two stab wounds to her neck. Cogan testified that one of the stab wounds severed the victim's external jugular vein, fractured a vertebrae, and cut the vertebral artery. He opined that the multiple stab wounds caused the victim to suffer a cerebral edema from blood loss.

Patrick Powers, a latent print examiner, testified that he examined the items recovered by Moneyhun. He was unable to find latent prints on the doorknob, knife, or telephones from the crime scene. He was able to develop a print from the laundry basket and concluded, based upon comparison, that the print came from defendant. Powers was unable to determine how long the print had been on the basket.

Jennifer Brosler is a forensic scientist at the State Police laboratory. She testified that she tested a swab from the stain on the laundry basket but was unable to detect any DNA in the stain. Brosler explained that one of the procedures used to recover the latent fingerprint may have caused the DNA to break down.

William Jones, defendant's brother, also testified. Defendant arrived on foot at William's home in Murphysboro, Illinois, on March 17, 1996. William had spoken to defendant on March 10, but defendant did not mention that he would be traveling to Murphysboro to visit. William eventually informed defendant that he had heard over his police scanner that defendant was wanted in connection with a stolen automobile. Defendant denied that he had stolen the vehicle but agreed to talk to the local sheriff. William testified that defendant was taken into custody when the sheriff learned of a warrant for defendant on the stolen vehicle.

Detective Beeter further testified that he was notified of defendant's surrender to the Jackson County sheriff on March 17, 1996. Beeter and another officer spoke with defendant on March 18, 1996, in Murphysboro. The officers informed defendant of his *Miranda* rights, and defendant indicated that he understood his rights and was willing to speak without an attorney. Defendant stated that he was a part owner of the Honda Civic and that he had taken it from the park-

ing lot and left it on Dundee Avenue in Elgin, with the keys in the car. He then allegedly hitchhiked to Murphysboro.

The jury heard closing arguments and instructions on March 19, 1997. The jury found defendant guilty of first-degree murder. Defendant filed a motion for a new trial, which was denied by the trial court. The State then moved to revoke probation in case No. 95—CF—2604. The trial court found that defendant had violated the terms of his probation based upon the first-degree murder conviction. The trial court sentenced defendant to 35 years' imprisonment on case No. 96—CF—524 and a consecutive sentence of 3 years' imprisonment in case No. 95—CF—2604. The trial court ordered that defendant receive 402 days' credit for time in custody toward the sentence in case No. 96—CF—524, as well as 90 days' credit for the jail time he served in case No. 95—CF—2604. Defendant timely appeals.

Defendant presents five issues on appeal: (1) whether the trial court erred in allowing the State to present evidence of defendant's prior crimes against the victim; (2) whether defendant is entitled to an additional 15 days' credit toward his sentence for first-degree murder; (3) whether the "truth-in-sentencing" law (730 ILCS 5/3—6—3(a)(2) (West 1996)) is unconstitutional; (4) whether defendant was wrongly sentenced for felony domestic battery; and (5) whether the sentence credit for No. 95—CF—2604 should be recalculated.

■■ Defendant first argues that the trial court committed reversible error in partially denying his motion *in limine* to exclude other crimes evidence. The admissibility of evidence is a determination made by the trial court; a review of this decision is made on an abuse of discretion standard. *People v. Childress*, 158 Ill. 2d 275, 296 (1994). Evidence of other crimes committed by a criminal defendant may not be admitted to show a defendant's propensity to commit crimes but is admissible when relevant for other purposes, including *modus operandi*, intent, identity, motive, or absence of mistake. *People v. Kliner*, 185 Ill. 2d 81, 146 (1998). The danger in admitting such other crimes evidence is that a jury may convict the defendant merely because it feels the defendant is a bad person who deserves to be punished. *People v. Placek*, 184 Ill. 2d 370, 385 (1998). In admitting evidence of prior bad acts, the trial court must use its sound discretion to weigh the relevance of the evidence against its prejudicial impact. *People v. Manning*, 182 Ill. 2d 193, 214 (1998). A trial court's determination of whether evidence is relevant and admissible will not be reversed absent a clear abuse of discretion resulting in prejudice to the defendant. *People v. Brodack*, 296 Ill. App. 3d 71, 76 (1998).

■ Defendant filed a motion *in limine* to prohibit the State from presenting evidence of the four years of alleged physical abuse he

visited upon the victim. The trial court found that the incidents between 1992 and 1994 were too remote in time to be highly probative. The trial court allowed the State to present evidence of defendant's alleged battery of the victim on December 12 and 16, 1995, as well as an act of violence witnessed by Pam Ferguson in the fall of 1995. The trial court also found that the probative value of an incident on January 31, 1996, when defendant hid in the victim's closet, outweighed its prejudicial impact. Parenthetically, the State ultimately chose not to introduce evidence concerning this incident. All of these incidents were within several months of the murder. In each of these incidents, defendant either committed an act of violence against the victim or engaged in conduct that some may define as obsessive. Each incident occurred within three months of the victim's murder. The State argues that the admitted evidence was relevant for purposes of showing the intent of the murderer and his motive. The trial court excluded evidence of other violence by defendant against the victim, which also may have been relevant for intent and motive, as being so remote in time that the prejudicial impact outweighed its probative value. Based upon our review of the record, we determine that the trial court did not abuse its discretion in finding the probative value of the other crimes evidence was not outweighed by its prejudicial impact.

■ Defendant's second argument on appeal is that he should receive 417 days' credit for time spent in custody prior to sentencing in case No. 96—CF—524. A criminal defendant is entitled to credit for any time spent in custody until the date of sentencing. *People v. Dominguez*, 255 Ill. App. 3d 995, 1005 (1994). The State concedes that defendant should have been credited for 417 days rather than 402 days. A remand is unnecessary because this court has the authority to directly order the clerk of the circuit court to make the necessary correction. 134 Ill. 2d R. 615(b)(1); *People v. McCray*, 273 Ill. App. 3d 396, 403 (1995). Accordingly, we direct the clerk to amend the sentencing order to reflect defendant's credit for time spent in custody, 417 days, in case No. 96—CF—524.

■ Defendant and the State both provide extensive argument concerning defendant's third issue, whether the "truth-in-sentencing" provisions of section 3—6—3(a)(2) (730 ILCS 5/3—6—3(a)(2) (West 1996)) are constitutional. This question was recently answered by the Illinois Supreme Court. In *People v. Reedy*, 186 Ill. 2d 1 (1999), the court held that the provisions, originally enacted on August 20, 1995, as part of Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995), were unconstitutional as violating the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). The court also concluded that amendatory legislation, Public Act 90—592 (Pub. Act

90—592, eff. June 19, 1998), should be applied only prospectively to offenses committed on or after June 19, 1998. *Reedy*, 186 Ill. 2d at 18. Since the offense in the present case predates the amendatory legislation, defendant is eligible to receive the good-conduct credit that he would have received prior to the enactment of Public Act 89—404. See *People v. Reedy*, 295 Ill. App. 3d 34, 44 (1998), *aff'd as modified*, 186 Ill. 2d 1 (1999).

■ Defendant further argues on appeal that the trial court erred in sentencing defendant as a Class 4 felon for his conviction of domestic battery. The legislature enacted the following sentencing provisions for domestic battery:

> "Domestic Battery is a Class A Misdemeanor. A second and subsequent violation is a Class 4 felony. In addition to any other sentencing alternatives, for any second conviction of violating this Section within 5 years of a previous conviction for violating this Section, the offender shall be mandatorily sentenced to a minimum of 48 consecutive hours of imprisonment. The imprisonment shall not be subject to suspension, nor shall the person be eligible for probation in order to reduce the sentence." 720 ILCS 5/12—3.2(b) (West 1996).

Defendant argues that the legislature intended "violation" in the second sentence of the paragraph to be analogous to "conviction." Since the sentence in case No. 95—CF—2604 was enhanced by a previous charge of domestic battery, defendant argues that his sentence should be reduced to a Class A misdemeanor.

The State disagrees. The State argues that the term "violation" has a broader scope than "conviction." The State cites *People v. Sheehan*, 168 Ill. 2d 298 (1995), in support of its position. In *Sheehan*, the court reviewed section 11—501(d)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(d)(1) (now 625 ILCS 5/11—501(d)(1)(A) (West 1996))), which provides that the sentence for driving under the influence may be enhanced for a person that has "committed" a violation for the third time.

■ Our research failed to reveal any previous interpretation of the relevant statutory language by other Illinois courts. We, therefore, must provide our own statutory interpretation. The primary rule of statutory interpretation is to ascertain and give effect to the legislative intent. *People v. Haynes*, 174 Ill. 2d 204, 222 (1996). The best indicator of that intent is the language of the statute, giving the language its plain and ordinary meaning. *Haynes*, 174 Ill. 2d at 222. Where such language reveals the legislative drafters' intent, we may not resort to other aids for construction. *People v. Brooks*, 158 Ill. 2d 260, 264 (1994). We must also consider all parts of the statute together. *People v. Warren*, 173 Ill. 2d 348, 357 (1996).

■ The plain language of section 12—3.2(b) enhances domestic battery to a Class 4 felony for "a second and subsequent violation" of the section and then describes a mandatory sentence for offenders that have a "second conviction of violating" the section. The Criminal Code of 1961 (the Code) (720 ILCS 5/1—1 *et seq.* (West 1996) defines "conviction" as "a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2—5 (West 1996). The word "violation" is not defined by the Code, so we may assume that the legislature intended for the term to possess its ordinary and popularly understood meaning. See *Sheehan*, 168 Ill. 2d at 306. Black's Law Dictionary defines "violation" as an "[i]njury; infringement; breach of right, duty or law; ravishment; seduction. The act of breaking, infringing, or transgressing the law." Black's Law Dictionary 1570 (6th ed. 1990). It is apparent that the common understanding of "violation" is broader in scope than the legislative definition of "conviction."

We note with interest that the legislature defined the mandatory sentence under section 12—3.2(b) as applying to offenders who had a second "conviction of violating" the statute. The use of both of these terms in the same paragraph indicates that the legislature recognized a difference between "conviction" and "violation." See *Sheehan*, 168 Ill. 2d at 306. Had the legislature intended the enhancement of domestic battery to require a second and subsequent conviction, it could have easily used the term that it had defined. Based upon our review of section 12—3.2 in its entirety, we determine that the legislature did not intend that a second conviction of domestic battery was required to enhance a defendant's charge in this type of case.

In the present case, defendant was charged with domestic battery on three separate occasions. The first charge did not result in a conviction, and the second charge was dismissed after defendant pleaded guilty to the third incident. However, based upon the foregoing analysis and our review of the evidence, defendant was correctly charged with and convicted of a Class 4 felony domestic battery in January 1996. Accordingly, we further determine that the trial court did not err when sentencing defendant for the probation violation on the domestic battery charge.

■ Finally, defendant argues that the trial court erred in failing to give him credit for his time in custody applied toward his sentence in case No. 95—CF—2604. Defendant and the State both agree that the trial court erred in granting defendant credit for 90 days in custody; the record reveals that he was in custody for only 46 days, and the sentencing order should be amended.

One last sentencing issue must be addressed. Recently, our supreme court decided that a criminal defendant should be given credit only once for each day spent in custody for multiple offenses that result in consecutive sentences. *People v. Latona*, 184 Ill. 2d 260, 270-72 (1998). Accordingly, defendant is entitled to 46 days' credit on the sentence in 95—CF—2604 for the time served from December 17, 1995, to January 31, 1996. As we noted earlier in this opinion, defendant is also entitled to 417 days' credit on the sentence in 96—CF—524 for the time served from March 17, 1996, to May 7, 1997. Therefore, defendant is entitled to an aggregate credit of 463 days against the sentences imposed in these cases.

Once again, as we noted earlier, it is unnecessary for this court to remand this matter. We direct the clerk of the circuit court to amend the sentencing order to reflect defendant's credit for time spent in custody, 46 days, in case No. 95—CF—2604.

For the foregoing reasons, the judgments of the circuit court of Kane County are affirmed as modified.

Affirmed as modified.

BOWMAN, P.J., and THOMAS, J., concur.