No. 1-99-1925 First Division

June 29, 2001

THE PEOPLE OF THE STATE OF ) Appeal from the

ILLINOIS, ) Circuit Court of 

) Cook County

Plaintiff-Appellee )

)

) No. 94 CR 12081

)

OMAR CHANEY, ) The Honorable

) Thomas F. Dwyer,

Defendant-Appellant. ) Judge Presiding.

JUSTICE COHEN delivered the opinion of the court:

Following a jury trial, defendant Omar Chaney was convicted of three counts of aggravated criminal sexual assault and one count of armed robbery.  The trial court sentenced Chaney to consecutive prison terms of 25, 9 and 6 years, respectively, for the three aggravated criminal sexual assault convictions.  The court also imposed a concurrent prison sentence of 25 years for the armed robbery conviction.  This appeal followed.

Chaney argues that his convictions must be overturned and a new trial granted because the prosecution impermissibly elicited testimony that before the victim identified Chaney from an array of photos, she had examined other photos in mug books without recognizing anyone.  Chaney further argues that because consecutive (rather than concurrent) sentences were imposed, based on a finding by the trial court on a matter neither charged nor submitted to a jury, his sentence was unconstitutional under 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  We affirm. 

1. Background

The victim, A.P., testified as follows.  On the evening of August 17, 1993, A.P. was waiting at Union Station for a friend to pick her up and drive her to suburban Elmhurst, where A.P. lived with her parents.  A.P. had just completed new student orientation at the University of Illinois at Chicago earlier that week.  A.P. had been waiting in the station between an hour and a half and two hours
 for her friend when she was approached by two men, who introduced themselves as "Mike" and "Ardmore."  A.P. later learned that "Ardmore" was the defendant, Omar Chaney.

The two men said that A.P. looked "kind of lost" and asked if they could help her.  A.P. agreed and explained her situation.  At their suggestion, A.P. had her friend paged over the station intercom, but there was no response.  They waited another half-hour and then, around 9:30 p.m., A.P. called her stepmother.  Her stepmother told A.P. that she needed to return home quickly because her curfew was 10 p.m.  No trains left Union Station for Elmhurst for another hour and a half.  The men said that their car was only a few blocks away and offered to give A.P. a ride to Elmhurst.  Because the men "seemed nice," she accepted. 

After they began walking to the car, the men said that they needed to stop at a friend's house prior to leaving for Elmhurst.  They walked for many blocks until they came to a red brick building at 846 South Racine.  They went into an apartment on the third floor.  Ms. Freddie Mae Harris, who resided in the apartment, let them in.

Harris testified that on August 17, 1993, she knew the defendant as "Omar Chaney."  She said that Chaney was a friend and that they had lived together on and off for about eight months.  Chaney arrived at Harris' apartment that night along with another man and a woman, whom she later learned to be A.P.  Harris' apartment was used as a "smoke house," a place where drug users gather to smoke cocaine.  A.P. and Harris sat in the kitchen, while Chaney and Mike went into another room to use cocaine.  Harris also used some cocaine.  A.P. just sat at the kitchen table and stared out the window.

A.P. testified that she kept telling Harris that she had to go back to Elmhurst.  However, she didn't want to leave the apartment by herself because "everybody was already staring at [her] and looking at [her] crazy."  A.P. said that she felt safer in the apartment because she did not know exactly where she was and she did not know anyone other than Mike and Chaney.  After about an hour, A.P. left the apartment with the two men.  Mike told her that the car was only a couple of blocks away.

The men walked A.P. down a series of alleys.  Chaney put his arm around her.  The men said they needed gas money.  Eventually, Mike grabbed A.P. from behind, covering her mouth
 with one hand.  Chaney drew a knife with a four-inch blade and a red handle.  The men dragged A.P. down an alley until they reached a rat-infested pile of flattened cardboard boxes near a loading dock, where they ordered A.P. to remove her clothes.  A.P. responded, "Why are you doing this to me.  Please don't do this to me."  Mike replied, "Take off your clothes, bitch.  You're getting what you deserve."  

Each of the men then raped A.P. multiple times, both orally and vaginally, while the other held the knife. The first time they raped A.P., they allowed A.P.
 to dress herself, then the men walked her toward some parked cars while Chaney went through her backpack.  They then returned her to the pile of boxes, where both men again raped her multiple times.  They also beat her and choked her.  When they had finally finished, Mike and Chaney had an argument about whether to kill A.P., with Mike stating that "I'm not going back to the pen.  I'm not going back there for that bitch."  Chaney, who argued against killing A.P., told A.P. to get dressed.

Chaney then walked A.P. along the streets for a while, telling her "You know, you really could be my girlfriend."  Chaney then hailed a taxi and put A.P. inside.  The driver asked if A.P. had any money.  When she said no, he told her to get out.  Chaney then put her in a second cab.  That cab was driven by Mehdi Seyf Tolooi.

Tolooi testified at trial that a man and a woman approached his cab between 2 and 2:30 a.m. on the morning of August 18, 1993.  He thought it looked as if "they had some kind of argument, some kind of disturbance, something was going on."  It was clear to him that something was wrong.  The woman's face "was jammed, smushed, very disturbed."  The man was holding a purse.  He told Tolooi to drive the woman to the suburbs and gave her the purse through the car window.

They drove off.  When the cab turned the corner, 
A.P. started shaking and crying.  She told Tolooi that the man had a knife and that he had raped her.  Tolooi radioed in to the dispatcher and the police arrived shortly thereafter.  Tolooi gave them a description of the man who had put A.P. in the cab.  A.P. showed the police where the rape had occurred and was taken to Northwestern Hospital.

An evidence technician surveyed the crime scene.  He found mascara, eyeliner and earrings that A.P. identified as her own.  A doctor examined A.P. and found her to be in a state of emotional distress with reddened areas about the face, a scratch on the left side of the neck, tender ribs and redness and tenderness in her pelvic area.  Her undergarments tested positive for semen.  However, no spermatozoa cells were found, thus precluding DNA testing.

The following day, A.P. went to the police station and viewed several books of photographs.  She did not recognize anyone.  Two weeks later, a detective came to her dorm room and showed her an array of five photographs.  A.P. immediately picked out Chaney's picture and identified him as one of the men who had raped her.  Later, she picked Chaney out of a lineup at the police station.  Two weeks after that, Tolooi also picked Chaney out of a lineup.  He thought Chaney looked "very, very familiar."  Tolooi said he was not positive that Chaney was the man who put A.P. in his cab, but said that he was more than 80% certain.

Augustus Spearman testified on behalf of Chaney.  Spearman said that he saw Chaney board a bus for St. Lawrence, Minnesota, on August 3, 1993, and did not see Chaney again until the end of August.

Chaney took the stand on his own behalf.  Chaney testified that on the date of the crime he was living with his fiancée in St. Paul, Minnesota.  He said that he knew Harris but had not been to her apartment.  He did not know A.P.  Chaney said that he was working in Minnesota at the time the rape occurred.  However, he was unable to produce a pay stub.

The jury found Chaney guilty of three counts of aggravated criminal sexual assault and one count of armed robbery.  The court sentenced Chaney to consecutive prison terms of 25, 9 and 6 years, respectively, for the three aggravated criminal sexual assault convictions and imposed a concurrent 25-year sentence for the armed robbery conviction.

Chaney now appeals his convictions and sentence.  He first argues that his convictions must be reversed because the trial court erroneously admitted evidence that, prior to the time A.P. identified the defendant from an array of photos, she had looked at mug books at the police station and had not recognized anyone.  Chaney also argues that his sentences must be reversed in light of the United States Supreme Court decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

2.  "Nonidentification" Testimony

The admissibility of evidence is determined by the trial court.  We review such determinations for abuse of discretion.  
People v. Jones
, 306 Ill. App. 3d 793, 799 (1999).  "Generally, a witness should not be permitted to testify that he made no identification when viewing photographs of persons other than [the] defendant."  
People v. Biggers
, 273 Ill. App. 3d 116, 121 (1995).  This rule is a subset of the larger principle that a witness generally may not testify as to his own prior consistent statements in order to corroborate testimony at trial.  
People v. Hayes
, 139 Ill. 2d 89, 138 (1990).  Here, A.P. testified that prior to her identification of Chaney's photograph, she had looked at mug books at the police station and had not seen anyone that she recognized.  The State acknowledges that this testimony ran afoul of the rule against prior "nonidentification" testimony.  However, Chaney failed to object to the admission of the testimony in question either at trial or in a posttrial motion.  Accordingly, he has waived the matter for purposes of this appeal.  
People v. Berry
, 241 Ill. App. 3d 993, 998 (1993) (
Terry Berry
).  

Chaney urges this court, however, to address the matter as plain error.  "The plain error doctrine (134 Ill. 2d R. 615(a)) may be applied where the evidence is closely balanced or where the error is of such magnitude that it denied the accused a fair trial."  
People v. Tisdel
, 316 Ill. App. 3d 1143, 1153 (2000).  Under the circumstances before us, we decline to do so.  This was not an error of such magnitude as to deny Chaney a fair trial.  Further, Chaney has not brought to our attention any case in which a court of review has found that the admission of prior "nonidentification" testimony denied a defendant a fair trial.  Indeed, the admission of such testimony has been held to be harmless even where the matter was not waived, where there were other errors, and where the prosecution relied upon the prohibited evidence in closing and rebuttal.  
People v. Berry
, 246 Ill. App. 3d 773, 781 (1994) (
Derrick Berry
).  Moreover, this is not a case in which the evidence is closely balanced.  In fact, even if we did not find the matter waived, we would nevertheless hold any error to be harmless due to the otherwise overwhelming evidence against Chaney. 

"The testimony of [the victim] was clear, convincing and unhesitating.  She was able to view the defendant for a considerable length of time under conditions permitting a positive identification to be made.  In our opinion, the non-identification testimony neither constituted a material factor in the jury's verdict nor served to deprive the defendant of a fair trial." 
Terry Berry
, 241 Ill. App. 3d at 998.

Along with the victim's persuasive testimony, Chaney was independently identified by Harris, whom Chaney admitted that he knew, as well as by the taxi driver, Tolooi.  

Given the nature of the evidence, we conclude that nothing in the circumstances of this case compels us to treat the admission of the subject testimony as plain error.  The objection is waived.  
Terry Berry
, 241 Ill. App. 3d at 998.  Chaney's convictions are affirmed.

3.  
Apprendi
 Issue

The trial court ordered, under section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 1998)), that the sentences for each of Chaney's three aggravated criminal sexual assault convictions run consecutively.   Section 5-8-4(a) states in relevant part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, 
unless
, one of the offenses for which defendant was convicted was a Class X or Class 1 felony
 and 
the defendant inflicted severe bodily injury, 
or 
where the defendant was convicted of a violation of Section 12-13, 12-14, or 12-14.1 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively."  (Emphasis added.)  730 ILCS 5/5-8-4(a) (West 1998).  

Citing the decision of the United States Supreme Court in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000),
 Chaney asserts that the imposition of consecutive sentences under this section is unconstitutional.  The 
Apprendi
 Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  Chaney argues that the failure to submit to a jury or to have proved beyond a reasonable doubt
 the question of whether his offenses "were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective"
 within the meaning of section 5-8-4(a) violated his rights to due process and trial by jury under 
Apprendi
.   

First, Chaney misreads the statute.  The determination under section 5-8-4(a) that offenses were "committed as part of a single course of conduct during which there was no
 substantial change in the nature of the criminal objective"
 does 
not
 trigger the imposition of consecutive sentences.  
730 ILCS 5/5-8-4(a) (West 1998).  Rather, such a determination 
bars
 the trial court from imposing consecutive sentences 
unless
 one of two named exceptions is present: (1) defendant was convicted of either a Class X or Class 1 felony 
and
 inflicted severe bodily injury, or (2) "defendant was convicted of a violation of Section 12-13, 12-14, or 12-14.1 of the Criminal Code of 1961."  
730 ILCS 5/5-8-4(a) (West 1998).  Chaney's conviction of aggravated criminal sexual assault in violation of section 12-14(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12-14(a)(1) (West 1998))
 falls within the second of the named exceptions to the consecutive sentencing bar, thereby
 triggering the imposition of consecutive sentences under section 5-8-4(a)  (730 ILCS 5/5-8-4(a) (West 1998)). 

Even if artfully framed, however, Chaney's 
Apprendi
 argument must fail.  Our supreme court has ruled that section 5-8-4(a) is constitutional
 under 
Apprendi
.  
People v. Carney
, No. 90549, slip op. at 13 (June 21, 2001).  
Chaney's consecutive sentences are therefore affirmed.

Affirmed.

McNULTY, P.J., and O'MARA FROSSARD, J., concur.