2023 IL App (2d) 210782
No. 2-21-0782
Opinion filed March 23, 2023
_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-137 |
| STUART J. CARLSON, | ) ) ) | Honorable John H. Young, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hudson and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Stuart J. Carlson, was charged with two counts of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(d)(1)(A), (d)(2)(B) (West 2020)). Count I alleged that defendant drove while under the influence of alcohol in violation of section 11-501(a)(2) of the Illinois Vehicle Code (*id.* § 11-501(a)(2)). Count II alleged that defendant drove with a blood alcohol concentration (BAC) of 0.08 or more. *Id.* § 11-501(a)(1). Both counts alleged that defendant "had two prior violations of [DUI]." Following a bench trial at which all the evidence was admitted by stipulation, defendant was found guilty of both counts. Defendant argues on appeal that, because the only evidence of his BAC was a blood test taken hours after driving, the State failed to prove beyond a reasonable doubt that his BAC was above the legal limit while

driving. Defendant also argues that the trial court erred in relying on a delinquency adjudication to elevate the offenses to aggravated DUI.[1] We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      At trial, the parties stipulated as follows. Boone County sheriff's deputy Shane Laga would testify that, while on patrol on March 15, 2020, at approximately 1:41 a.m., he observed a vehicle driven by defendant cross the center line and then weave within its lane, touching the center line and the fog line. Laga conducted a traffic stop and, while speaking with defendant, could smell a strong odor of an alcoholic beverage coming from the vehicle. Defendant's eyes were bloodshot, and he slurred his speech. Defendant admitted drinking "maybe half a six pack of Bud Light." He had his last drink between 9:30 and 10 p.m. Defendant agreed to perform field sobriety tests but failed to follow several instructions. Laga's encounter with defendant was video recorded, and excerpts of the recording were admitted into evidence.

¶ 4      Laga placed defendant under arrest for DUI. After defendant refused to submit to a breath test to determine his BAC, Laga obtained a search warrant to obtain a blood sample from defendant. A phlebotomist drew defendant's blood at 4:19 a.m. Testing of the blood sample revealed a BAC of 0.16 grams per deciliter.

---

[1] In his opening brief, defendant also argued that the trial court erred during his sentencing hearing by allowing an expert in forensic toxicology to opine on defendant's BAC when he was driving. However, in his reply brief, defendant "concedes that the issue was unwisely included in [his opening brief] and should not be reached by this Court." He also "concedes and withdraws [his] argument." Therefore, we will not address the issue.

¶ 5 Defendant's attorney conceded that the evidence was sufficient to establish that defendant was driving under the influence of alcohol as charged in count I. However, he argued that the State had failed to prove that, as count II charged, defendant's BAC was above the legal limit when driving. As noted, the trial court found defendant guilty of both counts, ordered the preparation of a presentence investigation report (PSI), and continued the matter for sentencing. The PSI revealed that defendant had been adjudicated a delinquent minor for committing aggravated DUI in 2006. The PSI further revealed that defendant was placed on supervision in 2007 for aggravated DUI and again in 2008 for DUI.

¶ 6 At the sentencing hearing, an expert in forensic toxicology testified that she performed a "back extrapolation calculation" to determine defendant's BAC at the time of the traffic stop. She concluded that his BAC was between 0.186 and 0.212 at the time of the traffic stop.

¶ 7 The trial court concluded that, because here defendant drove with a BAC of 0.16 or more *and* had committed DUI on two prior occasions, he was guilty of a Class 2 felony. Thus, he was subject to a minimum sentence of 90 days' imprisonment and a minimum fine of $2500 (see *id.* § 11-501(d)(2)(B)). The court sentenced defendant to a 2-year term of probation, 90 days of periodic imprisonment, and a $2500 fine. This appeal followed.

¶ 8                                            II. ANALYSIS

¶ 9 We first consider defendant's argument that the State failed to prove him guilty beyond a reasonable doubt of count II because the stipulated evidence did not establish that his BAC was 0.08 or more when he was driving. A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). When the sufficiency of the evidence is challenged, " 'the relevant question is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 10    Evaluating this argument requires a basic understanding of how the human body processes alcoholic beverages. As a court from a sister state has explained:

> "As alcohol is consumed, it passes from the stomach and intestines into the blood, a process referred to as absorption. When the alcohol reaches the brain and nervous system, the characteristic signs of intoxication begin to show. The length of time necessary for the alcohol to be absorbed depends on a variety of factors, including the presence and type of food in the stomach, the person's gender, the person's weight, the person's age, the person's mental state, the drinking pattern, the type of beverage consumed, the amount consumed, and the time period of alcohol consumption. At some point after drinking has ceased, the person's BAC will reach a peak. After the peak, the BAC will begin to fall as alcohol is eliminated from the person's body. The body eliminates alcohol through the liver at a slow but consistent rate.

> In 1932, Swedish chemist E.M.P. Widmark first calculated absorption and elimination rates in the body, and his work still represents the benchmark for other scientists' studies today. Widmark created what we know today as the 'BAC curve,' which represents the rise and fall of an individual's BAC as his body absorbs and eliminates alcohol. A reading from a single breath test will not reflect where the person is on his BAC curve. In other words, it will not indicate whether the person is in the absorption phase, at his peak, or in the elimination phase.

So if a driver is tested while in the absorption phase, his BAC at the time of the test will be higher than his BAC while driving. If tested while in the elimination phase, his BAC at the time of the test could be lower than while driving, depending on whether he had reached his peak before or after he was stopped. Obviously, the greater the length of time between the driving and the test, the greater the potential variation between the two BACs." *Mata v. State*, 46 S.W.3d 902, 909-10 (Tex. Crim. App. 2001) (*en banc*)).

Accordingly, if it can be shown that a motorist was driving during the elimination phase, a subsequent blood test will show a BAC no higher than the motorist's BAC while driving.

¶ 11    Citing *People v. Floyd*, 2014 IL App (2d) 120507, defendant argues that the results of a blood test taken hours after he was driving are inherently unreliable. *Floyd* is inapposite. That case dealt with the admissibility of the testimony of an expert who performed a "retrograde extrapolation" of the defendant's BAC. Retrograde extrapolation is a method determining a person's BAC at a particular time based on a subsequent test of his or her BAC. Here, no party sought to introduce such evidence at trial, so its admissibility is not at issue.

¶ 12    We note that, in *Floyd*, the defendant's BAC when tested was below the legal limit. The State sought to present retrospective extrapolation evidence to establish that it was over the legal limit at the time she was driving. *Id.* ¶ 9. Here, in contrast, defendant's BAC was twice the legal limit when his blood was drawn 2 hours and 38 minutes after the traffic stop. As discussed, if defendant was in the elimination phase when he was stopped, his BAC would have been as high or higher at that time than when his blood was drawn. Our decision in *Village of Bull Valley v. Winterpacht,* 2012 IL App (2d) 101192, is instructive. In *Winterpacht*, we upheld the defendant's DUI conviction, without retrograde extrapolation evidence, where her BAC was 0.182 two hours after she had had a motor vehicle accident. *Id.* ¶ 1. We explained:

"When there is a delay between when a defendant was driving and when blood is drawn, extrapolation evidence might be necessary when the blood alcohol level at the time of the test is below the statutory limit. In such a case, extrapolation evidence may be used to show that the blood alcohol level was above the limit when the defendant was driving. [Citation.] But no such evidence is necessary when the tested level is above the statutory limit. In such a case, when a reasonable amount of time elapses between when the defendant was driving and the test, extrapolation evidence is permissible but is not a foundational requirement. [Citation.] Matters of delay between driving and testing go to the weight of the evidence and must be viewed in light of the circumstances surrounding the arrest." *Id.* ¶ 13.

¶ 13    Defendant argues that retrograde extrapolation was unnecessary in *Winterpacht* because, as the *Winterpacht* court observed, the defendant appeared intoxicated when paramedics reached her but her condition improved over time. *Id.* ¶¶ 5-6. Although the defendant in *Winterpacht* did not frame her argument in terms of the absorption and elimination phases of alcohol consumption, we note that those circumstances suggested that she was in the elimination phase at the time of, or shortly after, the accident. In *Winterpacht*, we reasoned that "[t]hose facts corroborated the reasonable inference that, at the time of the accident, defendant's blood alcohol level was similar to, if not higher than, what it was tested at two hours later." *Id.* ¶ 15; see also *People v. Epstein*, 2022 IL 127824, ¶¶ 23, 28-29 (Evidence that the defendant's BAC was 0.107 based on a test of blood drawn approximately four hours after a traffic stop was admissible without retrograde extrapolation evidence; even though the defendant's conduct in police videos led her expert to opine that she was still absorbing alcohol after the stop, the jury was entitled to reject that opinion,

in which case the test result could be used to establish that her BAC while driving was over the legal limit.).

¶ 14    Evidently, it is defendant's view that the outcome in *Winterpacht* depended on the evidence that the defendant was in the elimination phase when driving or shortly thereafter. We need not resolve that question here. Even assuming (without deciding) that such evidence was necessary in *Winterpacht* (and necessary here), we find that the trial court in this case could similarly conclude beyond a reasonable doubt that defendant was in the elimination phase when he was stopped at 1:41 a.m. Defendant told the arresting officer that he had stopped drinking no later than 10 p.m. Thus, defendant had nothing to drink for at least 3 hours and 41 minutes. Although the rate of absorption (and hence the length of the absorption phase) can vary depending on many factors (see *Floyd*, 2014 IL App (2d) 120507, ¶ 16 (citing *State v. Eighth Judicial District Court*, 267 P.3d 777, 780 (Nev. 2011))), it is reasonable to infer that, within three hours after his last drink, defendant would have fully absorbed the alcohol he had consumed and his BAC would no longer be rising. See Justin Noval & Edward J. Imwinkelried, Retrograde Extrapolation of Blood Alcohol Concentration, 50 Crim. L. Bull. 188, 206 (2014) ("Researchers have found that some persons reach peak absorption in as few as fifteen minutes while other persons require a period as long as three hours."). Consequently, absent evidence indicating that defendant was still in the absorption phase after three hours, the trial court could reasonably infer that defendant's BAC, when stopped, was as high or higher than his BAC when his blood was drawn. (Again, we stress that we express no opinion on whether the evidence would have been sufficient without evidence of when defendant stopped drinking.)

¶ 15    Defendant next argues that the trial court erred in relying on a delinquency adjudication for DUI to find him guilty of aggravated DUI. Defendant was charged with aggravated DUI under

sections 11-501(d)(1)(A) and 11-501(d)(2)(B) of the Vehicle Code (625 ILCS 5/11-501(d)(1)(A), (d)(2)(B)) (West 2020)). Section 11-501(d)(1)(A) provides:

> "(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof if:
>
> > (A) the person committed a violation of subsection (a) or a similar provision for the third or subsequent time[.]" *Id.* § 11-501(d)(1)(A).

Section 11-501(d)(2)(B) provides, in pertinent part, that "[a] third violation of this Section or a similar provision is a Class 2 felony." *Id.* § 11-501(d)(2)(B).

¶ 16    Defendant argues that the "failure of the legislature to include, clearly, an incorporation of juvenile adjudications evinces a decision not to do so, as the legislature clearly knows how to draft the law." We disagree. The question presented is one of statutory construction and is governed by the following principles:

> "[I]n resolving an issue of statutory construction, the court's objective involves ascertaining and carrying out the 'true intent and meaning of the legislature evidenced by the language used.' [Citation.] Indeed, our inquiry 'always begin[s] with the language of the statute, which is the surest and most reliable indicator of legislative intent.' [Citation.] We give undefined statutory words and phrases their natural and ordinary meanings. [Citation.] And we enforce the clear and unambiguous language as written, without resort to other aids of construction, *e.g.*, legislative history. [Citation.] The construction of a statute is a question of law, which we review *de novo*. [Citation.]" *People v. Cavitt*, 2021 IL App (2d) 170149-B, ¶ 167.

¶ 17    The dispositive question is whether defendant committed a "violation" of the DUI statute for a third or subsequent time. "Black's Law Dictionary defines 'violation' as an '[i]njury; infringement; breach of right, duty or law; ravishment; seduction. The act of breaking, infringing, or transgressing the law.' " *People v. Jones*, 306 Ill. App. 3d 793, 802 (1999) (quoting Black's Law Dictionary 1570 (6th ed. 1990)). The definition does not depend on age. Indeed, under the Juvenile Court Act of 1987, a " '[d]elinquent minor' " is "any minor who prior to his or her 18th birthday has *violated* or attempted to *violate*, *** any federal, State, county or municipal law or ordinance." (Emphases added.) 705 ILCS 405/5-105(3) (West 2020). Thus, defendant's delinquency adjudication for aggravated DUI established that he "committed a violation" under the aggravated DUI statute.

¶ 18    Defendant also invokes the rule of lenity, under which ambiguous penal statutes are strictly construed to afford lenity to the accused. See *In re Detention of Powell*, 217 Ill. 2d 123, 142 (2005). "[T]he rule of lenity applies only to statutes containing 'grievous ambiguities,' leaving us unable to do more than merely 'guess' the legislature's intent." *People v. Fiveash*, 2015 IL 117669, ¶ 34 (citing *People v. Gutman*, 2011 IL 110338, ¶¶ 43-44). That is not the case here. Accordingly, the trial court did not err in relying on a delinquency adjudication to find defendant guilty of aggravated DUI.

¶ 19    Finally, defendant argues that his sentence violates section 5-5-3.2(b)(7) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(7) (West 2020)), which, according to defendant, "limits the use of Juvenile Adjudications as a reason to impose harsher sentences." The argument is meritless. Section 5-5-3.2(b)(7) governs when an offender is eligible for an extended-term sentence. Because defendant did not receive an extended-term sentence, section 5-5-3.2(b)(7) has no application here.

¶ 20                                  III. CONCLUSION

¶ 21    For the reasons stated, we affirm the judgment of the circuit court of Boone County.

¶ 22    Affirmed.

*People v. Carlson*, **2023 IL App (2d) 210782**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 20-CF-137; the Hon. John H. Young, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher J. Taylor, of Oswego, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Max C. Boose, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |