Docket Nos. 85191, 85297 cons.–Agenda 17–September 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GARY REEDY, Appellee.–THE PEOPLE OF THE STATE OF 

 ILLINOIS, Appellee, v. DANIEL E. WILSON, Appellant.

Opinion filed January 22, 1999.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

In this consolidated appeal, we are asked to determine whether the General Assembly violated the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)) when it enacted Public Act 89–404 (the Act) (Pub. Act 89–404, eff. August 20, 1995). Defendants in the present case were sentenced in accordance with the “truth-in-sentencing” law contained in Public Act 89–404. As codified in the provisions of section 3–6–3(a)(2)(ii) of the Unified Code of Corrections, truth-in-sentencing makes defendants eligible to receive no more than 4½ days of good-conduct credit for each month of their sentences. 730 ILCS 5/3–6–3(a)(2)(ii) (West 1996). Prior to the Act’s passage, persons convicted of certain crimes were eligible to receive one day of good-conduct credit for each day served in prison. See 730 ILCS 5/3–6–3(a)(2) (West 1994). For the reasons that follow, we hold that Public Act 89–404 violates the single subject rule.

BACKGROUND

Docket No. 85191

On December 13, 1995, defendant, Gary Reedy, was convicted by a jury in the circuit court of Lake County of aggravated battery with a firearm (720 ILCS 5/12–4.2(a)(1) (West 1996)) based upon actions which took place on September 1, 1995. Reedy was sentenced to 15 years’ imprisonment on January 18, 1996. On appeal to the Appellate Court, Second District, Reedy claimed, 
inter
 
alia
, that Public Act 89–404, which includes the “truth-in-sentencing” law under which he was sentenced, violated the single subject clause of the Illinois Constitution. The appellate court agreed, holding the Act void in its entirety and enjoining the State from enforcing the Act. 295 Ill. App. 3d 34. The State subsequently brought the instant appeal as a matter of right. 134 Ill. 2d R. 317.

Docket No. 85297

On January 23, 1997, a jury convicted defendant, Daniel Wilson, of robbery, armed robbery, residential burglary, and two counts of home invasion as a result of events that took place on February 22, 1996. Consequently, the circuit court of Peoria County sentenced Wilson to consecutive, extended-term sentences of 40 years’ imprisonment on the charge of armed robbery and one count of home invasion. On appeal to the Appellate Court, Third District, Wilson argued, 
inter
 
alia
, that the enactment of Public Act 89–404 was in violation of the Illinois Constitution. However, in an unpublished order, the appellate court followed its earlier holding in 
People v. Watford
, 294 Ill. App. 3d 462 (1997), stating that a defendant has no standing on direct appeal to challenge the constitutionality of the Act. No. 4–97–0267 (unpublished order under Supreme Court Rule 23). This court granted Wilson’s petition for leave to appeal. 166 Ill. 2d R. 315.

We consolidated these appeals in order to address the issues raised in both cases.

ANALYSIS

Initially, the State claims that both defendants are precluded from challenging the constitutionality of section 3–6–3(a)(2)(ii) on direct appeal. We observe that, on this issue of standing, there exists a split among the districts of the appellate court. See 
Wilson
, No. 4–97–0267 (3d Dist.) (unpublished order under Supreme Court Rule 23) (denying standing on direct appeal); 
People v. Watford
, 294 Ill. App. 3d 462 (3d Dist. 1997) (same); 
People v. Gooden
, 296 Ill. App. 3d 205 (5th Dist. 1998) (same); but see 
Reedy
, 295 Ill. App. 3d 34 (2d Dist.) (recognizing standing on direct appeal); 
People v. Pitts
, 295 Ill. App. 3d 182 (4th Dist. 1998) (same). The State relies primarily on the case of 
People v. Watford
, 294 Ill. App. 3d 462 (1997).

As in the present case, the defendant in 
Watford
 claimed that the truth-in-sentencing provisions of section 3–6–3(a)(2)(ii) violate the single subject rule. The court held that a defendant sentenced under the truth-in-sentencing law may not challenge the constitutionality of that law on direct appeal. 
Watford
, 294 Ill. App. 3d at 464. The court in 
Watford
 reasoned that, since the Department of Corrections, and not the trial court, is charged with enforcing the truth-in-sentencing law, that law is in no way a condition of a defendant’s sentence and is not within the scope of the sentencing proceedings. 
Watford
, 294 Ill. App. 3d at 464. The appellate court concluded that, in order for a defendant to contest the constitutionality of the truth-in-sentencing law, the Department of Corrections must first be allowed to enforce that law by calculating the defendant’s good-time credit in accordance with the truth-in-sentencing scheme. After such time, the defendant may file a 
habeas corpus
, 
mandamus
, or declaratory judgment action alleging that the Department of Corrections is determining his good-time credit pursuant to an act that is unconstitutional. 
Watford
, 294 Ill. App. 3d at 464.

We are not convinced by 
Watford
. As the appellate court in defendant Reedy’s case properly noted, courts of this state have traditionally recognized that good-time credit is a part of every sentence. See, 
e.g.
, 
People ex rel. Colletti v. Pate
, 31 Ill. 2d 354, 357 (1964) (good-time credit is “a part of every sentence”); 
People v. Baptist
, 284 Ill. App. 3d 382, 387 (1996) (a defendant’s compliance with conditions for good-time credit is a term of the original sentence). Numerous appellate court decisions have acknowledged that, since good-time credit is inherent in each sentence of imprisonment, trial courts may deem the possibility of good-time credit a factor in determining defendants’ sentences. See, 
e.g.
, 
People v. Fetter
, 227 Ill. App. 3d 1003, 1009 (1992); 
People v. Clankie
, 180 Ill. App. 3d 726, 733 (1989); 
People v. Torgeson
, 132 Ill. App. 3d 384, 389 (1985).

In cases involving sentences imposed pursuant to the truth-in-sentencing law, we are doubly persuaded that good-time credit is an important factor. This is evidenced by section 5–4–1(c–2) of the Unified Code of Corrections, which mandates that, during sentencing, the trial court must both instruct the public that the defendant is subject to the truth-in-sentencing provisions of section 3–6–3(a)(2)(ii) and notify the public of the actual period of time the defendant will likely spend in prison. 730 ILCS 5/5–4–1(c–2) (West 1996). The connection between the good-time credit scheme of the truth-in-sentencing law and sentencing hearings, therefore, is readily apparent. For these reasons we agree with the rationale expressed in 
People v. Pitts
, 295 Ill. App. 3d 182 (1998):

“[A]lthough it is true that [section 5–4–1(c–2)] provides that a trial court’s error regarding [truth-in-sentencing] provision[s]’ may not be relied on by the defendant on appeal’ [citation], that statement addresses a different matter than the constitutional question before us in this case. Here, the question is not whether the trial court correctly stated–and applied–the truth-in-sentencing provision; instead, the issue is whether Public Act 89–404 can 
constitutionally
 require the trial court to do anything regarding good-time credit.” (Emphasis in original.) 
Pitts
, 295 Ill. App. 3d at 190-91.

Indeed, in light of the fact that the sentencing courts were allowed to consider defendants’ potential good-time credit in deciding their sentences and that defendants were sentenced under the truth-in-sentencing law, it would be unjust to hold that defendants lack standing on direct appeal to challenge the constitutionality of the very statute under which they were sentenced. We, therefore, hold that a defendant sentenced under the truth-in-sentencing provisions enacted by Public Act 89–404 may challenge the constitutionality of those provisions on direct appeal. We now turn to the merits of defendants’ constitutional claims.

Single Subject Claims

Defendants argue that Public Act 89–404, which includes the truth-in-sentencing law, violates the single subject clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)). This clause provides, in relevant part:

“Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject.” Ill. Const. 1970, art. IV, §8(d). 

As we explained in 
Johnson v. Edgar
, 176 Ill. 2d 499 (1997), the single subject clause regulates the process by which legislation is enacted. 
Johnson
, 176 Ill. 2d at 502.

We are mindful that, in the determining whether a violation of the single subject clause exists, the term “subject” generally should be construed liberally in favor of the legislature. 
People v. Dunigan
, 165 Ill. 2d 235, 255 (1995). Indeed, we have long noted that legislative acts are to be afforded a considerable presumption of constitutionality. 
In re Marriage of Lappe
, 176 Ill. 2d 414, 422 (1997). This presumption, however, is not without limits. As we have stated in the past, the subject of a bill may be as broad as the legislature chooses, provided that the bill’s provisions have a “natural and logical connection.” 
Johnson
, 176 Ill. 2d at 515. That is, the General Assembly violates the single subject rule when it includes within one bill unrelated provisions that by no fair interpretation have any legitimate relation to one another. 
Johnson
, 176 Ill. 2d at 515; 
Dunigan
, 165 Ill. 2d at 255. Our overview of the history and content of Public Act 89–404 reveals that, in striking resemblance to 
Johnson
, this Act was enacted in violation of the single subject rule.

On March 3, 1995, Public Act 89–404, entitled “A Bill for an Act concerning the insanity defense,” began as Senate Bill 1187. In that original form, it was designed to increase a defendant’s burden of proof in asserting the insanity defense, redefine the term “insanity,” and amend rules relating to petitions for the transfer or release of defendants found not guilty by reason of insanity. The Senate passed the bill in its entirety on April 25, 1995. When addressed in the House of Representatives, however, Senate Bill 1187 underwent a substantial metamorphosis. One particularly important amendment deleted the entire text of the bill. The House took this opportunity to incorporate within the contours of Senate Bill 1187 numerous matters in addition to the subject of the insanity defense. These other matters included the: (1) duties and jurisdiction of local law enforcement agents; (2) drug forfeiture procedures and the allocation of proceeds from the sale of drug forfeiture assets; (3) truth-in-sentencing legislation; and (4) perfection and satisfaction of hospital liens. As a result of this multifaceted expansion, the House renamed the bill “An Act in relation to governmental matters, amending named Acts.” With the aforementioned amendments in place, the House passed the bill and returned it to the Senate for further approval.

Although the Senate subsequently debated over the amended bill, its discussions addressed only the truth-in-sentencing provisions added by the House. Absent from the debates were any discussions of the bill’s insanity defense provisions and other amendments. Nevertheless, the Senate passed the bill in its amended form. Senate Bill 1187 was subsequently signed into law by Governor Edgar on August 20, 1995.

Public Act 89–404, as enacted, is comprised of 10 sections addressing a number of topics. Section 5 of the Act amends the Counties Code (55 ILCS 5/1–1001 
et
 
seq
. (West 1996)) by restating a sheriff’s duty as “conservator of the peace.” Section 10 of the Act likewise alters the Illinois Municipal Code (65 ILCS 5/1–1–1 
et
 
seq
. (West 1996)) by redefining local police officers’ duty as “peace officers.” Section 15 amends the Criminal Code of 1961 (720 ILCS 5/1–1 
et
 
seq
. (West 1996)) by redefining the term “insanity” and enhancing the burden of proof for a defendant asserting the insanity defense. Section 20 amends the Cannabis Control Act (720 ILCS 550/1 
et
 
seq
. (West 1996)) by changing the distribution of proceeds from the sale of certain drug forfeiture assets. Section 25 alters the Illinois Controlled Substances Act (720 ILCS 570/100 
et
 
seq
. (West 1996)) by providing for multiple convictions and sentences for violators of that Act, adding new sentencing guidelines, and redirecting the distribution of proceeds from the sale of forfeiture assets. Section 30 amends the Code of Criminal Procedure of 1963 (725 ILCS 5/100–1 
et
 
seq
. (West 1996)) by defining the term “law enforcement agency” and increasing police officers’ authority to make arrests outside of their primary jurisdictions. Section 35 amends the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 
et
 
seq
. (West 1996)) by dropping the requirement that judicial 
in
 
rem
 proceedings be conducted without a jury. Section 40, which amends the Unified Code of Corrections (730 ILCS 5/1–1–1 
et
 
seq
. (West 1996)) in several respects, provides for new truth-in-sentencing rules for calculating good-conduct credit and early release and creates the Illinois Truth-in-Sentencing Commission. Section 40 also redefines the term “insanity” and modifies procedures regulating transfer or release petitions from defendants found not guilty by reason of insanity. Section 45 amends the Code of Civil Procedure (735 ILCS 5/1–101 
et
 
seq
. (West 1996)) by providing that the homestead exemption is not available to property subject to certain drug asset forfeiture proceedings. Finally, section 50 amends the Hospital Lien Act (770 ILCS 35/0.01 
et
 
seq
. (West 1996)) by, 
inter
 
alia
, bringing all hospitals operated by local governmental entities within the purview of that act and by altering the procedures for the perfection and satisfaction of hospital liens.

Based on the foregoing, we hold that the legislature violated the single subject clause of the Illinois Constitution in enacting Public Act 89–404. The Act was initially designed to address the singular subject of the criminal insanity defense. While this fact alone is not dispositive, we cannot overlook the fact that, as enacted, Public Act 89–404 deals with at least five separate legislative subjects involving both civil and criminal topics. In sum, the Act addresses such diverse subjects as: the basic duties and jurisdiction of law enforcement officials; the burden of proof for a criminal defendant asserting the insanity defense; rules governing drug offense and drug asset forfeiture proceedings; truth-in-sentencing law; and rules for the perfection and satisfaction of hospital liens. In our opinion, even the most liberal attempt to reconcile these various subjects is unavailing.

The State’s failure to explain the necessary or even logical connection between truth-in-sentencing legislation, basic law enforcement duties, and hospital liens is unquestionable. The State argues, for example, that all measures within the Act are legitimately interrelated, since “each of the sections involves governmental matters which are the responsibility of the various county State’s Attorneys.” To say that such a “connection” satisfies the single subject rule strains credulity. Furthermore, that these topics might fit within the broad subject of “governmental matters” is not compelling. As we cautioned in 
Johnson
, the permitted use of such a sweeping and vague category to unite unrelated measures would render the single subject clause of our constitution meaningless. 
Johnson
, 176 Ill. 2d at 517-18. We conclude that there is no “natural and logical connection” that could justify the enactment of these various matters in one act. Accordingly, we hold that Public Act 89–404 violates the single subject clause of the Illinois Constitution and is, therefore, unconstitutional in its entirety.

The State, nevertheless, advances three arguments explaining why this court should rule in its favor despite our finding of a single subject rule violation. First, the State entreats this court to adopt a rule that would limit the time in which a defendant could raise a single subject rule claim. This scheme, which the State has styled the “codification rule,” would preclude a defendant from challenging the constitutionality of an act on single subject grounds once it has become codified. The State relies primarily upon the Iowa case of 
State v. Mabry
, 460 N.W.2d 472 (Iowa 1990), which stated the rule as follows:

“Although an act, as originally passed, was unconstitutional because it contained matter different from that expressed in its title, or referred to more than one subject, it becomes, if otherwise constitutional, valid law on its adoption by the legislature and incorporation into a general revision or code ***.” 
Mabry
, 460 N.W.2d at 475.

The policy behind the codification rule is to strike a balance between the protective goals of the single subject rule and the public’s need for finality through the validation of new legislation. 
Mabry
, 460 N.W.2d at 475. In practice, the rule only allows a defendant to attack newly enacted legislation on procedure-related constitutional grounds between the date that act is passed and its date of official publication.

We decline to adopt the codification rule for several reasons. First, the rule goes against this state’s well-established single subject clause jurisprudence. Illinois cases on this subject illustrate the seriousness with which this court regards single subject clause violations. See, 
e.g.
, 
Johnson
, 176 Ill. 2d 499; 
People v. Dunigan
, 165 Ill. 2d 235 (1995); 
Fuehrmeyer v. City of Chicago
, 57 Ill. 2d 193 (1974).

In 
Johnson
, for example, we emphasized the dual purposes of the single subject clause. On one hand, the clause serves to prevent the enactment of legislation that, standing on its own, could not garner the votes necessary for passage. 
Johnson
, 176 Ill. 2d at 514; 
Geja’s Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 258 (1992). Indeed, in upholding the mandate of the Illinois Constitution, this court is duty-bound to ensure that the legislature refrains from the“ ‘practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all ***.’ ” 
Fuehrmeyer
, 57 Ill. 2d at 202, quoting 
People ex rel. Drake v. Mahaney
, 13 Mich. 481, 494-95 (1865).

A second and equally important purpose of the single subject clause is to facilitate the enactment of bills through a legislative process that is orderly and informed. See 
Johnson
, 176 Ill. 2d at 514. By limiting each bill to a single subject, each legislator can better understand and more intelligently debate the issues presented by a bill. 
Johnson
, 176 Ill. 2d at 514-15. These dual purposes of the single subject clause, therefore, promote direct confrontation and informed discussion of legislative issues submitted for enactment.

A codification rule would, in no uncertain terms, drastically diminish the effect and importance of the single subject clause of the Illinois Constitution. That a “window of time” is available to challenging defendants is no consolation in such cases, since the time between an act’s effective date and codification date is frequently minute. Moreover, a codification rule simply emphasizes finality over the importance of addressing the underlying wrong that exists in unconstitutionally enacted legislation. In our view, a codification rule in any form would unjustifiably emasculate the single subject rule in Illinois, and we, therefore, reject such a proposition. See also 
People v. Worden
, 299 Ill. App. 3d 836 (1998) (rejecting codification rule); 
People v. Dainty
, 299 Ill. App. 3d 235 (1998) (declining to apply codification rule).

Next, the State contends that, although Public Act 89–404 may have violated the single subject rule, it was not the act under which defendants were sentenced. The State claims that, instead, Public Act 89–462 is the law which applied to defendants’ cases. The State’s argument is disingenuous at best. Public Act 89–462 is comprised of a simple amendment adding the offense of predatory sexual assault of a child to the list of offenses to which the truth-in-sentencing law applies. The State argues that this amendatory language of Public Act 89–462 somehow validated all of the truth-in-sentencing provisions of Public Act 89–404 and, therefore, served as the curative legislation needed to bring the truth-in-sentencing law outside of single subject rule scrutiny.

As the State correctly asserts, the Illinois legislature has the power to enact curative legislation. See 
Johnson
, 176 Ill. 2d at 518; 
Bates v. Board of Education, Allendale Community Consolidated School District No. 17
, 136 Ill. 2d 260, 268 (1990). We note, however, that such legislation must exhibit on its face evidence that it is intended to cure or validate defective legislation. In 
Johnson
, for instance, an act held to be unconstitutional for violating the single subject rule was validated in part by amendatory legislation that completely recodified a statutory provision within the invalidated act and that provided a clause expressly validating all actions taken in reliance on the defective statute. 
Johnson
, 176 Ill. 2d at 521. In the case at bar, however, Public Act 89–462 does not recodify the language of the truth-in-

sentencing provisions of Public Act 89–404. It only inserts an additional offense to be included in the truth-in-sentencing provision. Moreover, it is entirely devoid of curative language that would validate any actions taken in reliance upon Public Act 89–404. We conclude, therefore, that Public Act 89–462 did not serve as curative legislation for any portion of Public Act 89–404.

Lastly, the State argues that, assuming Public Act 89–404 was enacted in violation of the single subject rule, such a flaw can nonetheless be considered harmless. The State bases its contention on the notion that, since each of the sections within Public Act 89–404 possessed the necessary support for individual passage, the purpose of the single subject rule prohibiting “log rolling” of unpopular measures was not implicated.

The State’s argument simply lacks merit. The State ignores the previously emphasized purpose of the single subject rule that promotes orderly and informed legislative debate and enactment. Since the crux of single subject rule analysis concerns the interrelatedness of an act’s provisions, the harm in passing discordant bills in one act without informed debate is obvious. Moreover, we hold that the harmless error standard is entirely inapplicable to an analysis of the constitutionality of legislative enactments. In our view, when the procedure by which the General Assembly enacts legislation contravenes a constitutional mandate, a harmless error standard is inappropriate. Such a standard, if endorsed by the judiciary, would be at least as deleterious to the single subject clause as the codification rule would be.

Amendatory Legislation

We note that, during the pendency of the appeals in this case, the General Assembly passed Public Act 90–592 (Pub. Act 90–592, eff. June 19, 1998). That act both deleted and recodified the entire truth-in-sentencing legislation originating from Public Act 89–404. Importantly, Public Act 90–592 contained the following two provisions:

“(a)(2) The rules and regulations on early release shall provide, 
with respect to offenses committed on or after the effective date of this amendatory Act of 1998
, the following:

* * *

(e) Nothing in this amendatory Act of 1998 affects the validity of Public Act 89–404.” (Emphasis added.) Pub. Act 90–592 §5 (eff. June 19, 1998) (amending 730 ILCS 5/3–6–3(a)(2) and adding 730 ILCS 5/3–6–3(e)). 

In light of our previous discussion with respect to curative legislation, we note that, unlike all preceding amendments to Public Act 89–404, Public Act 90–592 truly served to cure the effect that the former act’s invalidation had on the truth-in-sentencing law. Like the curative legislation deemed applicable in 
Johnson
, Public Act 90–592 recodified the truth-in-sentencing legislation in its entirety. Noting that the best evidence of the legislature’s intent is found in the plain language of a statute (
Kunkel v. Walton
, 179 Ill. 2d 519, 534 (1997); 
People v. Ross
, 168 Ill. 2d 347, 350 (1995)) and that subsection (a)(2) of Public Act 90–592 clearly states the legislature’s intention to apply the revisited truth-in-sentencing law in a prospective manner only, we hold that these reenacted provisions do not apply to defendants in this case. This result is mandated by the language of subsection (a)(2), which applies the curative truth-in-sentencing legislation to offenses committed on or after June 19, 1998.

Finally, our decision is undisturbed by subsection (e) of Public Act 90–592, which provides that the validity of Public Act 89–404 is unaffected by this amendatory act at issue. As we stressed in 
Johnson
:

“curative legislation may validate 
only actions taken in reliance on
 an unconstitutional statute. Curative legislation cannot validate or legalize the unconstitutional legislation itself.” (Emphasis added.) 
Johnson
, 176 Ill. 2d at 522-23, citing 
People ex rel. Patterson v. Woodruff
, 280 Ill. 472, 476 (1917).

Since the validity of Public Act 89–404 is determined by this court and not the legislature, subsection (e) of Public Act 90–592 is ineffectual.

CONCLUSION

In conclusion, we hold that Public Act 89–404 is unconstitutional. Therefore, the judgment of the appellate court in the matter of 
People v. Reedy
 is affirmed, and the judgment of the appellate court in the matter of 
People v. Wilson
 is reversed.

No. 85191–Appellate court judgment affirmed.

No. 85297–Appellate court judgment reversed.