THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD T. BORELLO, Defendant-Appellant.

Fourth District   No. 4—08—0504

Opinion filed April 28, 2009.

Michael J. Pelletier, Gary R. Peterson, and Michael H. Vonnahmen, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 1996, defendant, Ronald T. Borello, entered into a fully negotiated plea of guilty to four counts of predatory criminal sexual assault of a child. 720 ILCS 5/12—14.1(a)(1) (West 1996). In exchange therefor, defendant agreed to consecutive sentences of six years in the Illinois Department of Corrections (DOC) on each of the four charges for a total of 24 years in DOC to be served at 85% pursuant to the truth-in-sentencing statute. 730 ILCS 5/3—6—3(a)(2)(ii) (West 1996). Defendant also received 105 days of sentence credit for time served. Defendant did not file a direct appeal. In September 2007, defendant filed a *pro se* postconviction petition. In June 2008, the trial court dismissed the petition. Defendant appeals. We affirm.

## I. BACKGROUND

In June 1996, defendant was charged with four counts of predatory criminal sexual assault of a child. 720 ILCS 5/12—14.1(a)(1) (West 1996). The victim was defendant's eight-year-old stepdaughter. When interviewed by the police, defendant admitted having sexually abused the child on at least five other occasions over the previous year. In June 1996, defendant and the State entered into a written plea agreement whereby defendant agreed to plead guilty to all four counts and the court would impose an agreed sentence of six years in DOC on each count to be served consecutively, for a total of 24 years in DOC. The State agreed not to file additional charges against

defendant for the previous incidents of sexual abuse against the same victim. Defendant understood that, pursuant to the truth-in-sentencing statute (730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)), he would serve 85% of his sentence for a minimum of 20 years and 4 months in DOC. Defendant was given 105 days of sentence credit for time served. At no time did the trial court admonish defendant about the three years he would be required to serve on mandatory supervised release (MSR) upon his release from DOC. Neither did any of the sentencing documents mention MSR. Nor did defendant file any post-plea motions or a direct appeal.

In 1999, the Illinois Supreme Court found Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995 (1995 Ill. Laws 4306)), which limited the amount of good-conduct credit for certain offenses, unconstitutional because it violated the single-subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)). *People v. Reedy*, 186 Ill. 2d 1, 11-12, 708 N.E.2d 1114, 1119 (1999). Defendant was then entitled to day-for-day good-conduct credit.

In September 2007, 11 years after being sentenced, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 through 122—8 (West 2006)). In November 2007, defendant was allowed to file an amended *pro se* post-conviction petition to clarify the correct case number in which defendant was filing the petition. Defendant alleged in the amended petition that (1) at no time during the negotiations did the State mention the three years of MSR defendant would have to serve at the end of his DOC sentence; (2) during the plea hearing, the trial court never admonished defendant he would be required to serve three years on MSR following his term in DOC; (3) at the sentencing hearing, the court never mentioned MSR; (4) therefore, his constitutional rights to due process, equal protection, and fundamental fairness were violated because he pleaded guilty in exchange for a specific sentence but received a sentence more onerous than the one to which he agreed and, consequently, he did not receive the benefit of the bargain; (5) he was entitled to receive 105 days of sentence credit for each of his four sentences rather than the single credit of 105 days he was awarded; and (6) in March 2006 he was awarded 90 days of meritorious good-time credit by DOC and, therefore, with the above-stated reductions in his sentence, he should have been released on MSR on March 12, 2004, and discharged from MSR on March 12, 2007. Defendant requested that (1) his sentences be modified by reducing each 6-year sentence to $4^{1}/_{2}$ years to run consecutively to each other, followed by the 3 years on MSR, for a total of 24 years, (2) each of his 4 sentences also be reduced by 105 days of sentence credit, and (3) he be im-

mediately released from DOC without any restrictions, including service of any time on MSR.

In November 2007, the trial court appointed counsel to assist defendant with the postconviction proceedings.

At an April 2008 hearing, the State was given 21 days within which to file a response to the petition. The State did not file any written response. At a June 2008 hearing, the State orally admitted the allegations of the petition but did not state a position on the appropriate remedy. Defendant requested his sentence be reduced by three years commensurate with the time he would be required to serve on MSR. The trial court stated on the record that the parties and the court agreed defendant had not at any time been admonished regarding MSR. The court took the matter under advisement. Later in June 2008, the court entered a written order denying defendant's petition for postconviction relief on the grounds that (1) the petition was not timely filed and (2) defendant received the benefit of the bargain in his plea agreement.

This appeal followed.

## II. ANALYSIS

On appeal, defendant argues the trial court erred in denying his postconviction petition. More specifically, he argues that (1) the court erred in ruling the petition was not timely filed because the State did not raise the timeliness issue and (2) the court erroneously ruled that he had received the benefit of the bargain on the grounds that the sentence he received was not more onerous than the sentence he agreed to when he pleaded guilty. The State concedes that the court erred when it found that the petition was untimely. However, the State argues that the court was correct in denying the petition. We agree with the State.

The Act (725 ILCS 5/122—1 through 122—8 (West 2006)) provides a three-step process for adjudicating a postconviction petition. During the first stage, the "trial court, without input from the State, examines the petition *only* to determine if [it alleges] a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit." (Emphasis in original.) *People v. Phyfiher*, 361 Ill. App. 3d 881, 883, 838 N.E.2d 181, 184 (2005). If the trial court does not dismiss the petition at the first stage, the matter proceeds to the second stage where the court will appoint counsel to an indigent defendant who requests counsel and appointed counsel then has the opportunity to amend the claims in the postconviction petition. *People v. Patton*, 315 Ill. App. 3d 968, 971-72, 735 N.E.2d 185, 188 (2000). The State must then file either an answer or a motion to

dismiss. *People v. Johnson*, 377 Ill. App. 3d 854, 858, 879 N.E.2d 977, 980 (2007). If the petition makes a showing of a constitutional violation, it then proceeds to the third stage, at which the court conducts an evidentiary hearing. 725 ILCS 5/122—6 (West 2006). "An evidentiary hearing will be held only where the allegations of the postconviction petition make a substantial showing that the defendant's constitutional rights have been violated and the petition is supported by affidavits, records, or other evidence or explains why these items are not attached." *People v. Waldrop*, 353 Ill. App. 3d 244, 249, 818 N.E.2d 888, 893 (2004). The standard of review for a first- or second-stage dismissal is *de novo. People v. Coleman*, 183 Ill. 2d 366, 389, 701 N.E.2d 1063, 1075 (1998). In the present case, the court dismissed defendant's petition in the second stage of the postconviction proceedings.

A. The State Forfeited the Affirmative Defense of Untimeliness

Section 122—1 of the Act sets forth the time limitations in which a defendant must seek postconviction relief (725 ILCS 5/122—1(c) (West 2006)). The statute of limitations applicable to the filing of a defendant's petition is the version of that statute in effect when the petition was filed. *People v. Harris*, 224 Ill. 2d 115, 125 n.1, 862 N.E.2d 960, 967 n.1 (2007), citing *People v. Bates*, 124 Ill. 2d 81, 85-86, 529 N.E.2d 227, 228-29 (1988). When defendant filed his postconviction petition, section 122—1(c) of the Act provided in pertinent part as follows:

"If a defendant does not file a direct appeal, the post[ ]conviction petition shall be filed no later than [three] years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122—1(c) (West 2006).

However, the timing requirements of section 122—1(c) are "akin to a statute of limitations and can be waived or forfeited through procedural default." *People v. Boclair*, 202 Ill. 2d 89, 98, 789 N.E.2d 734, 739 (2002).

"Further, time is not an inherent element of the right to *bring* a post[ ]conviction petition. [Citation.] For that reason, time limitations in the Act should be considered as an affirmative defense and can be raised, waived, or forfeited, by the State. [Citation.] If an untimely petition demonstrates that a defendant suffered a deprivation of constitutional magnitude, a dutiful prosecutor may waive that procedural defect during the second stage of the post-conviction proceedings." (Emphasis in original.) *Boclair*, 202 Ill. 2d at 101-02, 789 N.E.2d at 742.

■ Here, defendant was sentenced on June 25, 1996. He did not pursue a direct appeal. Defendant filed his postconviction petition on September 11, 2007, more than 11 years after the date of his conviction. Defendant did not allege any facts showing that the delay was not due to his culpable negligence. However, the State did not raise timeliness before the trial court. On appeal, the State concedes the timeliness issue has been forfeited because of the State's failure to raise the issue below. Therefore, the State has forfeited the affirmative defense of untimeliness.

For the foregoing reasons, we find that the trial court erred when it found defendant's postconviction petition was untimely filed.

## B. The Trial Court Properly Denied the Petition

The State concedes that defendant was not admonished about MSR. However, the State argues that the trial court correctly denied defendant's postconviction petition because defendant was not prejudiced by the court's failure to properly admonish him since in the end he received a sentence shorter than was agreed to in the plea agreement.

*People v. Whitfield*, 217 Ill. 2d 177, 840 N.E.2d 658 (2005), is instructive in resolving whether defendant has made a substantial showing that his constitutional rights were violated when the trial court failed to advise him about MSR. In *Whitfield*, the defendant entered a fully negotiated guilty plea in exchange for concurrent 25-year and 6-year prison terms. *Whitfield*, 217 Ill. 2d at 179, 840 N.E.2d at 661. At no time during the plea proceedings did the prosecutor or the court advise the defendant that he would be subject to a three-year period of MSR following his release from prison. *Whitfield*, 217 Ill. 2d at 180, 840 N.E.2d at 661. The sentencing order did not reference the three-year MSR term required by law. *Whitfield*, 217 Ill. 2d at 180 n.1, 840 N.E.2d at 661 n.1. The defendant did not file a direct appeal. *Whitfield*, 217 Ill. 2d at 180, 840 N.E.2d at 661. Later, while serving his prison sentence, the defendant became aware that a 3-year term of MSR had been added to his 25-year sentence by operation of law. *Whitfield*, 217 Ill. 2d at 180, 840 N.E.2d at 661. The defendant filed a motion for relief from judgment that the court treated as a postconviction petition. The defendant contended that his fourteenth amendment (U.S. Const., amend. XIV) due-process rights were violated because he was never advised of the MSR that "had been added to his negotiated sentence and resulted in a 'more onerous' sentence than the one he had agreed to when he pled guilty." *Whitfield*, 217 Ill. 2d at 180, 840 N.E.2d at 661. The defendant did not request that his plea be withdrawn but sought to enforce the terms of the plea agreement by

reducing his 25-year prison term by the length of the MSR term. *Whitfield,* 217 Ill. 2d at 180-81, 840 N.E.2d at 661. The trial court denied the petition and the appellate court affirmed. *Whitfield,* 217 Ill. 2d at 181-82, 840 N.E.2d at 662.

The *Whitfield* court stated that a defendant's due-process rights may be violated where the defendant did not receive the "benefit of the bargain" of his plea agreement with the State. *Whitfield,* 217 Ill. 2d at 186, 840 N.E.2d at 664. The defendant in *Whitfield* argued that the trial court was required under Rule 402 (177 Ill. 2d R. 402) to admonish him on the record of the statutorily required MSR term. *Whitfield,* 217 Ill. 2d at 186, 840 N.E.2d at 664. The defendant argued that because the court failed to admonish the defendant of the statutorily required MSR term, the defendant's plea agreement included only the prison sentence and not the additional MSR term. *Whitfield,* 217 Ill. 2d at 186, 840 N.E.2d at 665. Under those circumstances, the *Whitfield* court concluded that adding the statutorily required 3-year MSR term to defendant's negotiated 25-year sentence amounts to a unilateral modification and breach of the plea agreement by the State, " 'inconsistent with constitutional concerns of fundamental fairness.' " *Whitfield,* 217 Ill. 2d at 190, 840 N.E.2d at 667, quoting *People v. Evans,* 174 Ill. 2d 320, 327, 673 N.E.2d 244, 248 (1996).

The *Whitfield* court concluded:

> "[A]lthough substantial compliance with Rule 402 is sufficient to establish due process [citations], and an imperfect admonishment is not reversible error unless real justice has been denied or the defendant has been prejudiced by the inadequate admonishment [citation], there is no substantial compliance with Rule 402 and due process is violated when a defendant pleads guilty in exchange for a specific sentence and the trial court fails to advise the defendant, prior to accepting his plea, that [an MSR] term will be added to that sentence." *Whitfield,* 217 Ill. 2d at 195, 840 N.E.2d at 669.

The *Whitfield* court held that the petitioner established a substantial violation of his constitutional rights because he pleaded guilty in exchange for a specific sentence, and the addition of the MSR term resulted in a sentence "more onerous than the one defendant agreed to at the time of the plea hearing." *Whitfield,* 217 Ill. 2d at 195, 840 N.E.2d at 669.

The supreme court further determined that, although the defendant was entitled to the benefit of his bargain, the law did not permit the term of MSR to be stricken from the defendant's sentence. *Whitfield,* 217 Ill. 2d at 202-03, 840 N.E.2d at 673. Accordingly, the

court held that the appropriate remedy, which would approximate the defendant's bargain with the State, was to reduce the defendant's prison term by a period equal in length to the MSR term. *Whitfield,* 217 Ill. 2d at 203, 840 N.E.2d at 674. In Whitfield, the court reduced the defendant's 25-year prison term by 3 years so that the sum of the 25-year prison term to which he had agreed in his plea agreement and the MSR term equaled 25 years. *Whitfield,* 217 Ill. 2d at 203, 840 N.E.2d at 674.

At first blush, it appears that, under *Whitfield,* defendant would be entitled to a 3-year reduction in his aggregate 24-year prison sentence for predatory criminal sexual abuse of a child. However, unlike in *Whitfield,* defendant has not established that he received a sentence that was more onerous than he understood he would have to serve and agreed to serve in his plea agreement, *i.e.,* 24 years at 85% for a minimum prison term of 20.4 years.

At the June 1996 plea hearing, the trial court went over the details of the written plea agreement with defendant in open court. Defendant indicated his intention to plead guilty. The court admonished defendant as to each charge against him and defendant expressed his understanding of the charges. Then specific exchanges occurred between the court, defendant, and defense counsel regarding the specific amount of time defendant would actually serve in DOC, to wit:

"THE COURT: Okay, you're here today with [counsel], who is your assigned public defender. Do you understand what is occurring today?

DEFENDANT: Yeah, I'm doing twenty-four years—

THE COURT: Okay—

DEFENDANT: —for a girl that's coming up here and seeing me.

THE COURT: All right. My question is, do you understand what's occurring today?

DEFENDANT: Yes.

THE COURT: All right. Let me show you two documents that your attorney has filed. First of all, I hand you a written document which is a guilty plea. Does your signature appear on that document?

DEFENDANT: Yes.

THE COURT: Did you sign it?

DEFENDANT: Yes.

THE COURT: And did you understand when you signed this document that you were pleading guilty to certain charges, [c]ounts 1, 2, and 3, and 4 in this court file?

DEFENDANT: Yes.

THE COURT: Did you, in fact, sign a written plea agreement?

DEFENDANT: Yes.

THE COURT: All right. Do you understand all of the terms of that agreement?

DEFENDANT: Part I don't understand is the [85%]. Everybody else's getting [50%]. How come I'm getting [85%]?

THE COURT: Okay, under the Truth in Sentencing Act[,] the statute clearly indicates that certain types of offenses require you to serve a higher percentage of your sentence than other types of offenses. Basically[,] less serious offenses where bodily injury has not occurred, non-Class X sexual offenses, allow day-for-day good time credit. The charges against you qualify as more serious offenses that would not qualify you for day-for-day good time. That's the reason.

DEFENDANT: How many years to [sic] I have to do out of [24]?

THE COURT: [Counsel], what did you advise your client during negotiations?

[COUNSEL]: 20.4 YEARS.

THE COURT: I'm sorry?

[COUNSEL]: 20.4 years actual time.

THE COURT: Do you understand what your public defender has just indicated would be your actual time of sentencing on this case?

DEFENDANT: Basically[,] I've got to do [20] years of that for a girl that got a disease, not even from me.

THE COURT: Mr. Borello, you don't have to plead guilty at all. You have a right to a trial, and if what you're now telling me is that you want a trial[,] I will set your case for trial.

DEFENDANT: No, we'll just take the stupid agreement, because I already heard what the State's going to ask for, [100] years, if I'm found guilty then.

THE COURT: I'm not going to take a stupid agreement from you today. If that's your attitude, then I'm not going to enter your plea.

DEFENDANT: I'm taking the agreement. I'm taking the agreement, sir. Can I have, at least, a week left in the county, satisfy some paperwork I've got to settle? I apologize for my behavior.

THE COURT: Well, why don't we just take a few minutes for you to relax a few minutes, Mr. Borello. Go back in the holding cell, Mr. Borello.

Deputy, take him back there.

\* \* \*

THE COURT: All right. Now I've reviewed with you the terms of your plea agreement, Mr. Borello. Anything about that agreement that you do not understand?

DEFENDANT: I just don't understand the [85%] part.

THE COURT: Okay. Well, at the time of sentencing I will re[ ]explain to you the sentencing guidelines under the Truth in Sentenc-

ing Act. That is mandated by statute. Depending on the type of offense that you're convicted on, you get a certain amount of good time, and I'll explain that at the time of sentencing.

DEFENDANT: So[,] basically[,] I could be a good boy for [10] years, it still don't mean nothing?

THE COURT: That's the law. Since August of 1995, any offense after that date, there is mandatory good time, and the more serious the offense[,] the less good time you get.

Do you understand the plea agreement?

DEFENDANT: Yeah.

THE COURT: Any questions, Mr. Borello?

DEFENDANT: Yeah, see you in [20] years."

In exchange for the negotiated plea, the State agreed not to file additional charges against defendant for prior sexual acts defendant admitted he committed against the same victim on five separate occasions.

At the August 1996 sentencing hearing, additional communication occurred between the trial court and defendant concerning the plea agreement and defendant's term in DOC, to wit:

"THE COURT: *** Mr. Borello, before I impose the sentence today, is there anything further you would like to say?

DEFENDANT: I still don't know why I'm getting the [85%].

* * *

THE COURT: Mr. Borello, these offenses occurred in April of 1996, which is after the date of the Truth in Sentencing Act in the State of Illinois. The Truth in Sentencing Act went into effect August 20th of 1995. Under that statute[,] the legislature changed the eligible good-time rules in the State of Illinois for any case that occurred after August 20th of 1995.

The charges in this case are predatory criminal sexual assault, which are charges under sections of the statute which do not entitle you for [sic] day-for-day good time. They require that you serve [85%] of your sentence, and that is the Illinois statute that makes that requirement under the Truth in Sentencing Act.

The purpose of this statement is to inform the public of the actual period of time this defendant is likely to spend in prison as [a] result of this sentence. The actual period of prison time served is determined by the statutes of Illinois as applied to this sentence by the Illinois Department of Corrections and the Illinois Prisoner Review Board.

In this case, assuming the defendant receives all of his good-conduct credit, the period of estimated actual custody is [20] years and [4] months, less 105 days for the time he has served in custody on [c]ount I. The defendant will not be allowed any additional good-conduct credit for meritorious service.

If the defendant, because of his own misconduct, failure to comply with institutional regulations, or otherwise does not receive those credits, the actual time served in prison will be longer.

The defendant is not eligible to receive an additional one-half day good[-]conduct credit for each day of participation in the industrial, substance abuse, and vocational programs as provided by Illinois statute.

I can't be any clearer than I am, Mr. Borello. The reason you're getting an [85%] sentence is because that's what the statute requires. You're not eligible.

[DEFENDANT]: Yeah, then how come all these other freaking people are walking off on this bull shit [sic]?

THE COURT: All right, I've submitted copies of the judgment order to all parties.

You have the right to appeal today's sentencing order, Mr. Borello, and I want to explain to you your rights to appeal.

[DEFENDANT]: Get me the fuck out of here. I'm going to DOC, end of the fuckin' story. Get me out of here right now.

I don't care."

Defendant was sentenced to the agreed-upon term of 4 consecutive 6-year sentences at 85% percent with 105 days' credit for time served, and the State did not file any additional charges against defendant. In 1999, due to the ruling in the *Reedy* case that the 1995 truth-in-sentencing law was unconstitutional because of the single-subject requirements, defendant became eligible for day-for-day good-time credit with the potential to be released in 12 years rather than 20.4 years.

In the June 2008 order denying defendant's postconviction petition, the trial court stated as follows::

"Simply put, the sentence imposed upon petitioner was not more onerous than the one agreed to at the time of the plea hearing, to-wit: (1) [p]etitioner fully expected to serve 20.4 years (less credit for time served of 105 days) and in reality is scheduled to serve his full sentence *with MSR* by January 21, 2011. (See DOC calculation sheet attached to petitioner's [p]etition for [p]ost[ ][c]onviction [r]elief.) Even without the MSR being tacked on to the petitioner's fully negotiated plea agreement[,] January 21, 2011, is at least 5 years less of a restraint on petitioner's liberty than petitioner agreed to. The petitioner not only received the benefit of the bargain, he enjoyed a windfall of P.A. 89—404 being held unconstitutional in *People v. Reedy*, 186 Ill. 2d 1[, 11-12, 708 N.E.2d 1114, 1119] (1999); (2) [p]etitioner asserts the reduction in his sentence from 85% to 50% '*does not* and *cannot* detract from the issue at hand, as the percentage of time that Mr. Borello must serve of his

sentence imprisoned in a correctional center *is not* at issue. Nor can it be made an issue in the instant matter.' In fact, it is a central issue. Petitioner's characterization is equivalent to the Wizard of Oz lamely trying to salvage his scam, bellowing 'Pay no attention to that man behind the curtain!' Dorothy and her friends do, of course, and the fraud is exposed for what it is. Under the *Whitfield* analysis, the addition of the MSR term in petitioner's circumstances does not violate due process, as the sentence imposed is not more onerous than the one agreed to by petitioner at the time of the plea hearing; and (3) the petitioner's argument conveniently omits what the State bargained for in reaching the agreement. In addition to expecting that the petitioner would spend 20+ years in prison for these offenses, the State also agreed to not file in additional charges relating to five other incidents of sexual contact reported by the victim, and also confessed to by Mr. Borello (per transcript of plea hearing). It is more than reasonable to assume that had the State been aware at the time of the petitioner's plea hearing that he would serve 50%, not 85%, of his DOC sentence, the additional charges may have been pursued." (Emphases in original.)

In *People v. Jarrett*, 372 Ill. App. 3d 344, 867 N.E.2d 1173 (2007), this court expressed concerns about both the analysis and remedy in *Whitfield*. This court determined that *Whitfield* should not be construed as a wholesale approval of the practice of decreasing a prison sentence by years of MSR in every case where the defendant may not have been fully admonished about MSR. This court further noted that "[t]he court in *Whitfield* did not choose to reduce defendant's sentence by three years because it found that three years of MSR were included in the maximum sentence, but rather fashioned that remedy in an attempt to 'approximate' the original deal between the State and defendant." *Jarrett*, 372 Ill. App. 3d 351, 867 N.E.2d at 1179.

In *Jarrett*, this court further noted as follows:

"If the facts were the same in the case *sub judice* as they were in *Whitfield*, *i.e.*, if the case before this court involved a fully negotiated plea, the trial court never mentioned MSR, and the written judgment did not reflect MSR, we would be constrained to follow *Whitfield*. See *People v. Flatt*, 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515 (1980) ('the precedential scope of a decision is limited to the facts before the court')." *Jarrett*, 372 Ill. App. 3d at 351, 867 N.E.2d at 1180.

Again, at first blush, it would seem that the precedential scope of *Whitfield* would require us to simply reduce defendant's 24-year sentence by the 3 years' MSR. However, the facts in the instant case are distinguishable from *Whitfield* in one key respect, *i.e.*, defendant enjoyed a 35% increase in the good-time credit he would receive on his

24-year sentence when the 1995 truth-in-sentencing law was found unconstitutional by the *Reedy* case. Moreover, defendant was then also eligible for other types of credit previously excepted, including meritorious service and participation in educational, vocational, and substance-abuse programs (see 730 ILCS 5/3—6—3(a)(4) (West 1996)).

In *People v. Giampaolo*, 385 Ill. App. 3d 999, 898 N.E.2d 130 (2008), the defendant was sentenced to 8 years in a Kane County case and 10 years in a McHenry County case to be served consecutively, after pleading guilty to a Class 1 felony in each county. *Giampaolo*, 385 Ill. App. 3d at 1000, 898 N.E.2d at 132. In the Kane County case, the record was devoid of any evidence about whether the defendant was properly admonished about the two years he would have to serve on MSR and the reviewing court presumed he was properly admonished. *Giampaolo*, 385 Ill. App. 3d at 1004, 898 N.E.2d at 135-36. However, the defendant was not so admonished in the McHenry County case and the State conceded that he was not. *Giampaolo*, 385 Ill. App. 3d 1004, 898 N.E.2d at 135. The defendant did not file any postjudgment motions or a direct appeal. *Giampaolo*, 385 Ill. App. 3d at 1000, 898 N.E.2d at 132. In his postconviction petition, the defendant argued, in relevant part, that his 10-year McHenry County sentence must be reduced to 8 years because of the 2-year MSR term he was not admonished about in the McHenry County plea proceedings. *Giampaolo*, 385 Ill. App. 3d at 1000, 898 N.E.2d at 132. The *Giampaolo* court found significant the fact that the defendant had been properly admonished about MSR in the Kane County case because the defendant's 8-year sentence in Kane County was to run consecutively with his 10-year sentence in McHenry County and, therefore, the defendant could serve only one term of MSR after serving his consecutive sentences. *Giampaolo*, 385 Ill. App. 3d at 1005, 898 N.E.2d at 136. The court found that the defendant, who received a total sentence of 18 years in prison plus 2 years of MSR, would have received that same sentence even if the trial court in McHenry County had properly advised the defendant about MSR. *Giampaolo*, 385 Ill. App. 3d at 1005, 898 N.E.2d at 136. Accordingly, the court found that the defendant's sentence was no more onerous than the one he was told he would receive and, therefore, the defendant had failed to establish that the trial court's incomplete admonishments prejudiced him. *Giampaolo*, 385 Ill. App. 3d at 1005, 898 N.E.2d at 136. The court affirmed the trial court's third-stage denial of the defendant's postconviction petition because the defendant had failed to make a substantial showing that his constitutional rights were violated when the trial court in McHenry County failed to admonish him about MSR. *Giampaolo*, 385 Ill. App. 3d at 1005, 898 N.E.2d at 136.

■ The failure to make a substantial showing of constitutional violation is even more lacking in the case *sub judice* than in *Giampaolo*. Here, not only was defendant not prejudiced by the trial court's incomplete admonishments, and not only did he receive the benefit of the bargain in his plea agreement, he enjoyed a 35%-plus windfall reduction in the minimum sentence he was required to serve when the truth-in-sentencing requirement that he serve 85% of his sentence and that he was not eligible for other sentence credits was vacated.

For the foregoing reasons, we find that the trial court did not err in denying defendant's postconviction petition.

### C. Defendant Has Forfeited the Issue of Additional Credit for Time Served in the County Jail

■ In his postconviction petition, defendant argued that he was entitled to more credit for time served, *i.e.*, 105 days' credit on each of the four consecutive sentences imposed, for a total of 420 days' credit. However, defendant did not argue this issue in his appellant brief. Therefore, defendant has forfeited the issue on appeal due to his failure to comply with Illinois Supreme Court Rule 341(h)(7), which provides, "[p]oints not argued [in the appellant's brief] are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 210 Ill. 2d R. 341(h)(7); see also *Vernon Hills III Limited Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 310-11, 678 N.E.2d 374, 379 (1997).

### III. CONCLUSION

For the reasons stated, we affirm the trial court's denial of defendant's postconviction petition. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

Affirmed.

McCULLOUGH, P.J., and POPE, J., concur.