NOTICE

This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241315

NO. 4-24-1315

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| JAMES D. PIGGUES, | ) | No. 98CF480 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court properly dismissed defendant's petition for relief from judgment.

¶ 2   Defendant James D. Piggues appeals the dismissal of his petition for relief from judgment. He argues that the circuit court erred in dismissing his arguments asserting that the truth-in-sentencing provision under which his punishment was imposed was unconstitutional. The Office of the State Appellate Defender (OSAD) has filed a motion to withdraw, asserting there is no nonfrivolous basis to seek reversal of the court's dismissal. For the reasons that follow, we grant OSAD's motion to withdraw and affirm.

¶ 3                    I. BACKGROUND

¶ 4   Our summary of the background in this case begins with legislative events and related court cases that occurred before the events that gave rise to defendant's conviction.

¶ 5   In August 1995, the legislature passed Public Act 89-404 (eff. Aug. 20, 1995)

(hereinafter Act I). As noted in subsequent decisions evaluating its validity, Act I began life as a bill aimed at changing the contours of the insanity defense in criminal proceedings. Through the bicameral process, the bill expanded to 10 sections, "covering an impressive array of subjects." *People v. Reedy*, 295 Ill. App. 3d 34, 39 (1998). One of the amendatory sections altered "the rules and regulations governing good conduct credit," commonly referred to as truth-in-sentencing provisions. *Id.* at 40. While Act I changed the good conduct credit applicable to numerous offenses, pertinent here was the change "that a prisoner who is serving a term of imprisonment for first degree murder shall receive no good conduct credit and shall serve the entire sentence imposed by the court." Pub. Act 89-404, § 40 (eff. August 20, 1995) (amending 730 ILCS 5/3-6-3(a)(2)).

¶ 6        The constitutionality of Act I was challenged in *Reedy* as violative of the Illinois Constitution's single-subject clause (Ill. Const. 1970, art. IV, § 8(d)). *Reedy*, 295 Ill. App. 3d at 36. The appellate court found that despite the heavy presumption of constitutionality that legislative enactments enjoy, "the legislature clearly crossed the line and violated the single subject [clause]" in crafting Act I. *Id.* at 42. Therefore, the legislative amendments were "invalid and unenforceable" due to Act I's "structure and the manner in which it was enacted." *Id.* at 44. This disposition was issued on March 11, 1998, approximately eight months before the events giving rise to the charges against defendant.

¶ 7        In response to the appellate court's finding in *Reedy*, the legislature, on June 19, 1998, enacted Public Act 90-592 (hereinafter Act II) (Pub. Act 90-592 (eff. Jun. 19, 1998) (amending 730 ILCS 5/3-6-3(a)(2) and adding *id.* § 3-6-3(e)), which recodified the legislative amendments in Act I's truth-in-sentencing provisions and cured the constitutional deficiency. Approximately six months after this second enactment, defendant was charged with the underlying offense.

¶ 8 The events giving rise to the charges against defendant occurred on December 1, 1998. He was formally charged on December 3 of that year with first degree murder (720 ILCS 5/9-(a)(1), (a)(2) (West 1998)).

¶ 9 Meanwhile, the State appealed the appellate court's decision in *Reedy* to the supreme court. On January 22, 1999, the supreme court issued a decision agreeing with the appellate court that Act I violated the single-subject clause of the Illinois Constitution. *People v. Reedy*, 186 Ill. 2d 1, 11 (1999). The court went on to note that, during the pendency of the appeal, the legislature had enacted curative legislation, Act II, that "truly served to cure the effect that the former act's invalidation had on the truth-in-sentencing law." *Id.* at 17. Looking to the newly enacted Act II, the court opined that, by the plain language of the statements, Act II's amendments were prospective and therefore did not apply to the defendant in that case. *Id.* at 17-18. The court also noted that a provision labeled subsection (e) provided " 'Nothing in this amendatory Act of 1998 affects the validity of Public Act 89-404.' " *Id.* at 17 (quoting Pub. Act 90-592 § 5 (eff. Jun. 19, 1998) (amending 730 ILCS 5/3-6-3(a)(2) and adding *id.* § 3-6-3(e))). Subsection (e) of Act II was, however, "ineffectual" because it was the court that was tasked with determining the validity of Act I. *Id.* at 18.

¶ 10 Defendant was convicted on one count of first degree murder in November 2000, and he was sentenced the next month. At sentencing, the State noted that any sentence imposed would be served without good conduct sentencing credit, the result required under the applicable statute as amended by Act II. Defendant was sentenced to 40 years' imprisonment on December 15, 2000.

¶ 11 Defendant filed a direct appeal, and his conviction was affirmed in August 2002. *People v. Piggues*, 332 Ill. App. 3d 1143 (2002) (table) (unpublished order under Illinois Supreme

Court Rule 23). Defendant then filed a postconviction petition in 2003 that was summarily dismissed; that dismissal was affirmed on appeal. *People v. Piggues*, 352 Ill. App. 3d 1231 (2004) (table) (unpublished order under Illinois Supreme Court Rule 23). Defendant never raised a claim that the legislative enactment amending the truth-in-sentencing provisions was unconstitutional.

¶ 12　　　　In March 2020, defendant filed a petition for relief from judgment (735 ILCS 5/2-1401(f) (West 2020)), advancing five grounds in support of his argument that Act II was unconstitutional. The State filed a motion to dismiss, alleging, among other things, that all the issues could have been raised on direct appeal but were not; that the *Reedy* cases were available to defendant at his sentencing; and that the petition was untimely pursuant to the statute.

¶ 13　　　　The matter proceeded to a hearing, at which the circuit court entertained argument. After the hearing, defendant sent the court a letter, stating that his sole contention was that Act II was unconstitutional because of the supreme court's finding in *Reedy* that subsection (e) violated the separation of powers doctrine and was ineffectual.

¶ 14　　　　In July 2023, the circuit court held another hearing, where the parties continued to argue the merits of defendant's petition. Defendant asserted that the court had *sua sponte* recharacterized his petition into a postconviction petition. Further, he asserted that he was only raising the third and fourth grounds of unconstitutionality stated in his petition for relief from judgment.

¶ 15　　　　The circuit court found that all of defendant's claims failed due to procedural bar, as well as a lack of merit. Defendant filed a motion to reconsider, in which he conceded that two of the grounds advanced in his petition were without merit. The motion to reconsider was denied.

¶ 16　　　　This appeal followed. On appeal, OSAD filed a motion for leave to withdraw pursuant to Illinois law (see *People v. Kuehner*, 2015 IL 117695, ¶ 15 (citing Ill. S. Ct. R. 137 (eff.

Jan. 4, 2013)); *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 8), along with a supporting memorandum stating that there are no nonfrivolous arguments that could be advanced. Defendant filed a response, largely reiterating the points argued in the circuit court.

¶ 17                                II. ANALYSIS

¶ 18        In its motion for leave to withdraw, OSAD notes that defendant below abandoned certain claims made in his petition during argument in the circuit court and he further conceded in his motion to reconsider that those claims were meritless. Despite this acknowledgment, OSAD goes on to evaluate the merit of all the claims listed in defendant's petition for relief from judgment. We appreciate OSAD's thoroughness in this appeal. Defendant, in his response to OSAD's request to withdraw, makes several arguments that consist of significant overlap. Generally, he argues that the legislature violated the separation of powers doctrine when it enacted curative legislation while the supreme court was considering the validity of a prior enactment that covered the same topic; subsection (e) of the curative legislation was found "ineffective" by the supreme court, rendering the entire enactment void *ab initio*; and finally, that his lack of notice of the alleged violation of the separation of powers doctrine by the legislature violated his rights to due process and equal protection.

¶ 19        Given defendant's repeated affirmative waiver of certain claims in the circuit court and his failure to raise those grounds in his response, we review only those claims urged in the circuit court and advanced in his objection to OSAD's request to withdraw in this court. We also review the procedural considerations advanced by OSAD in the memorandum.

¶ 20        Legislative enactments are presumed constitutional. *People v. Dunigan*, 165 Ill. 2d 235, 244 (1995). A defendant presenting a facial challenge—as defendant does here—bears a particularly heavy burden. *People v. Villareal*, 2023 IL 127318, ¶ 14. The issue of whether a

legislative enactment is constitutional presents a question of law, which is reviewed *de novo*. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 406 (2006). Additionally, the dismissal of a section 2-1401 petition on legal grounds is reviewed *de novo*. *People v. Wells*, 2023 IL 127169, ¶ 23.

¶ 21    Going straight to the heart of defendant's claims, we agree with OSAD that there is no nonfrivolous argument that can be asserted that Act II was unconstitutional. While the appeal to the Illinois Supreme Court in *Reedy* was pending, the legislature's passage of Act II "truly served to cure the effect that [Act I]'s invalidation had on the truth in sentencing law." *Reedy*, 186 Ill. 2d at 17. Defendant's specific contention that the curative legislation was an invasion of the province of the judiciary is unsupported.

¶ 22    Regarding the separation of powers doctrine, the Illinois Constitution states that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. However, defendant presents no authority that the legislature cannot pass prospective curative legislation while a prior legislative enactment is under review, and there is ample authority—aside from *Reedy*—to the contrary. See *People ex rel. Bauer v. Elmhurst-Villa Park-Lombard Water Comm'n*, 20 Ill. 2d 139, 143-44 (1960); *People v. Slater*, 304 Ill. App. 3d 489, 490-91 (1999); *Allegis Realty Investment v. Novak*, 223 Ill. 2d 318, 337 (2006). Moreover, the reviewing courts in *Reedy* made clear that their finding of constitutional infirmity had nothing to do with the substance of the prior enactment, just the broad sweep of the topics it attempted to address.

¶ 23    Regarding subsection (e) of Act II, defendant wishes to focus on one portion of the supreme court's decision in *Reedy* to the exclusion of others. While it is true that the court found subsection (e) of the curative legislation was ineffectual, the context of that statement is imperative.

The court had already found that the curative legislation had effectively reinstated the amendments to the truth-in-sentencing scheme, and in considering whether the curative legislation was retroactive, it noted that by its explicit terms, the amendment was prospective only. In determining whether subsection (e) altered the result of the case before it, the supreme court found the language of subsection (e) was "ineffectual." *Reedy*, 186 Ill. 2d at 18.

¶ 24 Further, even if defendant were correct that subsection (e) was unconstitutional, he has failed to show why that subsection could not be severed from the remaining portion of Act II. In determining whether severability is possible, a court first looks to the severability clause in the statute, and if there is none, it resorts to the Statute on Statute's general severability provision (see 5 ILCS 70/1.31 (West 2024)). *People v. Mosley*, 2015 IL 115872, ¶ 29. Here, the legislative enactment had no severability clause requiring a default to the Statute on Statute's severability clause. Referencing the Statute on Statute's clause, *Mosley* states that severability revolves around "whether the valid and invalid portions of the statute are essentially and inseparably connected in substance, such that the legislature would not have passed the valid portions of the statute absent the invalid portion." *Id.* ¶ 30. In other words, "we may remove an unconstitutional portion of a statute and preserve the remainder if what remains is complete in and of itself, and is capable of being executed wholly independently of the severed portion." *Id.* Here, Act II would remain complete and capable of execution in the absence of subsection (e). The only subject of subsection (e) was the validity of Act I, not Act II.

¶ 25 Given that the legislature was well within its authority to pass curative legislation while *Reedy* was on appeal and that subsection (e) of Act II has no impact on its validity, there was no violation of the separation of powers doctrine. Of course, this finding also dooms defendant's claims that he was denied due process and equal protection because he could not have

challenged Act II's truth-in-sentencing provisions due to the lack of notification that subsection (e) violated the separation of powers doctrine. Moreover, as the timeline set forth above depicts, defendant *did* have notice of whatever he purports the supreme court's decision in *Reedy* declares, where that decision was available to him at the time of his sentencing and the State declared at sentencing that he would not be afforded good conduct credit.

¶ 26       Finally, OSAD considers one more possible basis in its motion to withdraw, examining the merits of a possible challenge to the procedure employed in disposing of defendant's petition for relief from judgment. Illinois courts have recognized that basic notions of fairness dictate that a defendant filing a section 2-1401 petition be afforded notice of, and a meaningful opportunity to respond to, any motion or responsive pleading by the State. *People v. Stoecker*, 2020 IL 124807, ¶¶ 20, 22.

¶ 27       We are unable to find any procedural deficiency in the manner in which the circuit court advanced defendant's petition. Defendant was afforded substantial latitude in filing and amending his pleadings, as well as in responding to the State's opposition to his petition. Although defendant at one point contended the court had recharacterized his petition as a postconviction petition, the record plainly rebuts this assertion. In any event, the court was under no obligation to recharacterize defendant's pleading as a postconviction petition. See 725 ILCS 5/122-1(d) (West 2022); *People v. Price*, 2016 IL 118613, ¶ 34.

¶ 28                                  III. CONCLUSION

¶ 29       For the reasons stated, we grant OSAD's motion to withdraw and affirm the circuit court's judgment.

¶ 30       Affirmed.